**ASCENDANT ANESTHESIA PLLC
and Richard Toussaint, M.D.,
Appellants,**

v.

**Alketa ABAZI, Appellee.**

**No. 05–11–00115–CV.**

Court of Appeals of Texas,
Dallas.

Aug. 2, 2011.

Monte K. Hurst, Lauren Zimmerman Farkas, Katherine Khristine Elrich, Hermes Sargent Bates, L.L.P., Dallas, TX, for Appellants.

Robert Edward Wolf, Ryan H. Anderson, Jeffrey H. Rasansky, Rasansky Law Firm, Dallas, TX, for Appellee.

Before Justices RICHTER, LANG, and FILLMORE.

## OPINION

Opinion By Justice LANG.

In this interlocutory appeal, Ascendant Anesthesia PLLC ("Ascendant") and its

"founder and chief" Richard Toussaint, M.D. (collectively, "appellants") appeal the trial court's order denying Ascendant's motion to compel arbitration of claims for damages between Ascendant's former employee Alketa Abazi and appellants. In two issues on appeal, appellants assert the trial court erred by refusing to compel arbitration of the claims at issue because (1) a valid agreement exists requiring binding arbitration of such claims and (2) Ascendant did not waive its right to arbitration.

We conclude the trial court erred by denying the motion to compel arbitration. Accordingly, we reverse the trial court's order denying Ascendant's motion to compel arbitration, render judgment granting that motion, and remand this case to the trial court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ascendant provides anesthesia services in facilities where surgeries are performed, including hospitals and surgery centers. Abazi was employed by Ascendant as "practice administrator" for approximately one year.

After Ascendant terminated Abazi's employment, Ascendant filed this suit against Abazi seeking injunctive relief, damages, and a declaratory judgment. In its original petition, Ascendant alleged that "over the course of her employment, Ms. Abazi unlawfully converted patients' medical records that belong to Ascendant or Dr. Toussaint, in methodically devising a long-term plan to ultimately extort money from Ascendant and/or Dr. Toussaint by threatening to disclose a fabricated and completely unfounded tale that Ascendant engaged in illegal billing practice." Additionally, Ascendant alleged that after it terminated Abazi, she "published to third parties con-

fidential and proprietary information belonging to Ascendant, including patients' information, patients' billing records, and records illustrating or pertaining to billing activity with regard to those patients' accounts."

At approximately the same time Ascendant's original petition was filed, the trial court signed a temporary restraining order pursuant to an agreement between Ascendant and Abazi. That temporary restraining order directed Abazi to immediately surrender to Ascendant any and all protected health information and confidential documents belonging to Ascendant and prohibited Abazi from disclosing any and all protected health information.

Abazi filed a general denial answer, a counterclaim against Ascendant, and a third party claim against Toussaint. Abazi sued Ascendant and Toussaint jointly for wrongful termination, breach of contract, and intentional infliction of emotional distress and asserted a defamation cause of action against Toussaint. Further, Abazi filed a third party claim for tortious interference against AccuPro Services, Ltd. ("AccuPro"), a company alleged to be affiliated with Ascendant and Toussaint. Finally, a petition in intervention was filed by Janis Mrozek against AccuPro for wrongful termination and against Ascendant and Toussaint for tortious interference.

Approximately three weeks after the filing of Abazi's counterclaims, Ascendant filed a motion to compel arbitration in which it cited the following provision (the "arbitration provision") from its "Anesthesia Policies" ("Policies"):

> By accepting and continuing the employment relationship Ascendant and each employee agree that any controversy, dispute or claim between an employee and Ascendant, except for disputes involving any employee's obligations in-

volving noncompetition, non solicitation and disclosure of information belonging to Ascendant, shall be settled by final and binding arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association.

In its motion, Ascendant contended the arbitration provision encompasses (1) "all of the claims for damages between Abazi and Ascendant, including the counterclaims asserted by Abazi" and (2) "the claims Abazi asserts against [Toussaint] in his individual capacity." Ascendant requested that the trial court "order the parties to pursue their respective claims for damages in arbitration, pursuant to the [arbitration provision]."

Abazi raised two grounds on which the motion to compel arbitration should be denied. First, Abazi claimed the parties intended for the arbitration provision to apply only to disputes between current employees and Ascendant. Abazi maintained that because she is a former employee, rather than a current employee, Ascendant cannot compel arbitration in this case. Alternatively, Abazi argued that assuming the arbitration provision encompasses the claims at issue, the trial court should deny the motion because Ascendant waived its right to arbitrate by substantially invoking the judicial process to Abazi's detriment.

Although Ascendant's motion sought to compel arbitration of Abazi's claims for damages against both Ascendant and Toussaint, Abazi raised no objection to arbitration of her claims against Toussaint other than the two grounds set out above. Further, Abazi did not dispute in the trial court that the claims between her and appellants are otherwise subject to the arbitration provision and such provision is enforceable under the Federal Arbitration Act ("FAA"). *See* 9 U.S.C.A. §§ 1–16 (West, Westlaw through August 2, 2011).

Ascendant's motion to compel arbitration did not seek arbitration as to Abazi's claims against AccuPro or Mrozek's claims against AccuPro, Ascendant, and Toussaint.

After a hearing, the trial court signed an order stating, "Based upon the pleadings on file, the motion and response, and the arguments of counsel, the Court determines that Plaintiff Ascendant Anesthesia, PLLC's Motion should be, and is, in all respects DENIED." (emphasis original). This interlocutory appeal timely followed. *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.016 (West Supp. 2010).

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We apply an abuse of discretion standard of review respecting interlocutory appeals under section 51.016 of the Texas Civil Practice and Remedies Code. *Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 862–63 (Tex. App.-Dallas 2010, no pet.). Under that standard, "we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex.2009). Whether an arbitration clause imposes a duty to arbitrate is a matter of contract interpretation and a question of law for the Court to review de novo. *BDO Seidman, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 852, 854 (Tex.App.-Dallas 2010, no pet.). In a de novo review, the trial court's decision is given absolutely no deference. *Id.*

A party seeking to compel arbitration under the FAA must establish that (1) there is a valid arbitration agreement, and (2) the claims raised fall within the agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005). "Arbitration agreements are inter-

preted under traditional contract principles." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003).

When parties disagree over the meaning of an unambiguous contract, the court must determine the parties' intent by examining and considering the entire writing in an effort to give effect to the parties' intentions as expressed in the contract. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *Nicol v. Gonzales*, 127 S.W.3d 390, 394 (Tex.App.-Dallas 2004, no pet.). The parties' intent must be taken from the agreement itself, and the agreement must be enforced as written. *Wells Fargo Bank, Minn., N.A. v. N. Cent. Plaza I, L.L.P.*, 194 S.W.3d 723, 726 (Tex.App.-Dallas 2006, pet. denied); *Nicol*, 127 S.W.3d at 394; *see also Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995) (only where contract is first determined to be ambiguous may courts consider parties' interpretation or admit extraneous evidence to determine true meaning of instrument). We "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Seagull Energy E & P, Inc.*, 207 S.W.3d at 345; *accord MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex.1999). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex.2011) (citing *Coker*, 650 S.W.2d at 393).

■ "Doubts regarding an agreement's scope are resolved in favor of arbitration because there is a presumption favoring agreements to arbitrate under the FAA." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737; *accord In re Rubiola*, 334 S.W.3d 220, 225 (Tex.2011). "Such a presumption is particularly applicable where the clause is broad." *BDO Seidman, LLP*, 327 S.W.3d at 857. "In such cases, '[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Id.* (citing *AT & T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.*

## III. APPLICATION OF LAW TO FACTS

### A. Applicability of Arbitration Provision to Claims Involving Former Employees

■ In their first issue, appellants contend the trial court erred by refusing to compel arbitration of all claims between Abazi and appellants because "a valid unambiguous agreement exists requiring that the asserted claims be resolved through binding arbitration and, even if an ambiguity in the scope of the arbitration agreement did exist, all ambiguities must be resolved in favor of arbitration." Abazi responds (1) the arbitration provision is unambiguous and does not encompass the "post-employment disputes at issue in the underlying lawsuit" and (2) Toussaint has "no standing in this interlocutory appeal to argue that the third-party claims against him should be compelled to arbitration, when he, as a third-party defendant separate from Ascendant, never moved the trial court to compel arbitration."

We begin by addressing whether the arbitration provision encompasses "post-

employment" claims between Ascendant and Abazi. Abazi argued in the trial court, and now asserts on appeal, that Ascendant may not compel her, a former employee, to arbitrate because the arbitration provision applies only to disputes between current employees and Ascendant. Appellants contend the trial court erred by denying the motion to compel arbitration because the trial court interpreted the term "employee" in the arbitration provision to include only current employees, rather than encompassing both current and former employees. According to appellants, (1) there is no "temporal language" in the arbitration provision that limits the provision to current employees and (2) the broad scope of the arbitration provision dictates that it applies to controversies, disputes, and claims asserted by both current and former employees of Ascendant.

No party claims the Policies, of which the arbitration provision is a part, are ambiguous. We agree they are not. Accordingly, we determine the parties' intent by examining and considering only the contract at issue. *See Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520 (only where contract is first determined to be ambiguous may courts consider parties' interpretation or admit extraneous evidence to determine true meaning of instrument).

The Policies include provisions pertaining to employee conduct, disciplinary and discharge procedures, and arbitration. The term "employee" is used in several of those provisions. Abazi contends that in the entirety of the Policies, "the words 'employee' or 'employees' are never used in a manner making either susceptible to interpretation as 'former employee' and that interpretation should not be given to those words in the arbitration provision." However, no provision of the Policies, on its face, precludes application of the Policies to former employees. Further, one

provision, titled *"Confidential Information,"* states that an "employee" is prohibited from disclosing any of Ascendant's confidential information "either during or after an employee's employment." Any matter involving information disclosed by an employee "after an employee's employment" would necessarily involve a former employee.

Additionally, Abazi argues that because the arbitration provision "carved out the disputes most likely to occur between an employer and former employees," i.e. disputes involving "noncompetition, non solicitation and disclosure of information belonging to Ascendant" are expressly not subject to arbitration, the unambiguous language of the provision that requires arbitration for all other controversies does not extend to claims by former employees. However, nothing in the plain language of the arbitration provision says the "carved out" disputes are limited to former employees. It is certainly foreseeable that a disciplined, current employee could be involved in a "carved out" dispute with Ascendant. Moreover, the arbitration provision states in relevant part that "Ascendant and each *employee* agree that any controversy, dispute or claim between an *employee* and Ascendant, except for disputes involving any *employee's* obligations involving noncompetition, non solicitation and disclosure of information belonging to Ascendant" shall be settled by arbitration. (emphasis added). Abazi's interpretation would require construing the first two uses of the term "employee" in that sentence to mean "current employee" and the third use to mean "former employee." Thus, the language of the arbitration provision as a whole cannot be harmonized under Abazi's interpretation. *See Seagull Energy E & P, Inc.*, 207 S.W.3d at 345. We cannot agree that, in the absence of language drawing a line of demarcation between current employees

and former employees, the "carved out" types of disputes are limited to former employees.

Further, as described above, the terms of the arbitration provision require arbitration of "*any* controversy, dispute or claim between an employee and Ascendant" (emphasis added), with the exception of three specific types of disputes. Such language has been described as "broad." *See, e.g., 950 Corbindale, L.P. v. Kotts Capital Holdings Ltd. P'ship,* 316 S.W.3d 191, 195–96 (Tex.App.-Houston [14th Dist.] 2010, no pet.) ("presumption of arbitrability is particularly applicable when the clause is broad; that is, it provides for arbitration of 'any dispute arising between the parties' "). "Where an arbitration clause is broad and the particular grievance sought to be excluded is not expressly excluded by such clause, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *BDO Seidman, LLP,* 327 S.W.3d at 857. "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* In light of the broad language of the arbitration provision and the absence of language in the Policies or the arbitration provision expressly excluding claims between Ascendant and former employees, we conclude the arbitration provision is not limited to claims between Ascendant and current employees. *See id.*

■ Next, we consider whether the trial court properly denied arbitration as to Abazi's claims against Toussaint. Abazi asserts, without citing authority, that Toussaint "has no standing in this interlocutory appeal" because he "did not properly move for arbitration." Although Abazi made no complaint in the trial court respecting Toussaint's alleged failure to

properly move for arbitration, "standing" cannot be waived and may be raised for the first time on appeal. *See OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.,* 234 S.W.3d 726, 735 (Tex.App.-Dallas 2007, pet. denied). The general test for standing is whether there is a real controversy between the parties that will actually be determined by the judgment sought. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). "To establish standing, a person must show a personal stake in the controversy." *In re B.I.V.,* 923 S.W.2d 573, 574 (Tex.1996) (per curiam). Further, the standing doctrine requires a controversy to continue to exist between the parties at every stage of the legal proceedings, including the appeal. *City of Dallas v. Woodfield,* 305 S.W.3d 412, 416 (Tex.App.-Dallas 2010, no pet.).

■ As described above, Toussaint was named as a third party defendant in this case and was alleged to be jointly liable with Ascendant on the claims asserted as counterclaims and, in a separate part of Abazi's pleading, alleged to be the sole party liable to Abazi for slander. In its motion to compel arbitration, Ascendant requested arbitration of (1) "all of the claims for damages between Abazi and Ascendant, including the counterclaims asserted by Abazi" and (2) "the claims Abazi asserts against [Toussaint] in his individual capacity." The trial court denied that motion "in all respects," and a notice of appeal was filed by Ascendant and Toussaint. We conclude a real controversy exists on appeal with respect to the claims asserted by Abazi against Toussaint and such controversy is one in which Toussaint has a "personal stake." *See In re B.I.V.,* 923 S.W.2d at 574; *Tex. Ass'n of Bus.,* 852 S.W.2d at 446. Therefore, we cannot agree with Abazi that Toussaint lacks "standing" as to this appeal. *See In re*

*B.I.V.,* 923 S.W.2d at 574; *Tex. Ass'n of Bus.,* 852 S.W.2d at 446.

Now we consider appellants' contention that all claims involving Abazi and Toussaint should be compelled to arbitration because: (1) Toussaint is an "agent, employee, and representative of Ascendant" and (2) alternatively, the claims involving Abazi, Ascendant, and Toussaint are "factually intertwined with each other to such a degree that arbitration of all claims is warranted."

 "Nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *McMillan v. Computer Translation Sys. & Support, Inc.,* 66 S.W.3d 477, 481 (Tex.App.-Dallas 2001, no pet.). "When the principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are covered by that agreement." *Id.* "[E]xtending the scope of an arbitration provision to an agent of the party who signed the agreement furthers the federal policy of favoring arbitration and the parties' intent to provide a single forum to resolve disputes arising under an agreement." *Id.*

 Further, "[c]laims, even if otherwise not arbitrable, can become arbitrable when factually intertwined with arbitrable claims." *Tex. Petrochemicals LP v. ISP Water Mgmt. Servs. LLC,* 301 S.W.3d 879, 885 (Tex.App.-Beaumont 2009, no pet.) (citing *Jack B. Anglin Co., Inc. v. Tipps,* 842 S.W.2d 266, 271 (Tex.1992)). "To be within the scope of an arbitration provision, the allegations need only be factually intertwined with arbitrable claims or otherwise touch upon the subject matter of the agreement containing the arbitration provision." *In re Prudential Sec. Inc.,* 159 S.W.3d 279, 283 (Tex.App.-Houston [14th Dist.] 2005, orig. proceeding).

 Abazi does not dispute that Toussaint is an agent of Ascendant. In her brief before this Court, Abazi refers to Toussaint as Ascendant's "founder and member" who "fired" her. Further, throughout Abazi's last-filed pleading asserting her counterclaims and third party claims, she repeatedly referred to actions being taken by "Ascendant defendants," which she defined as both Ascendant and Toussaint. She alleged Ascendant and Toussaint were jointly liable for wrongful termination and intentional infliction of emotional distress. Also, she claimed both breached, i.e. "failed to follow," Ascendant's "Disciplinary and Discharge Procedures" when she was terminated. Finally, while Abazi claimed in one count that Toussaint, alone, is liable for slanderous statements made about her after her termination, she also generally alleged that "at all times material hereto, all acts of Ascendant's officers, directors, and management were done while acting in their respective actual and/or apparent authority within the course and scope of their employment with and under direction of Ascendant." On this record, we conclude Toussaint is covered by the arbitration provision under agency principles. *See McMillan,* 66 S.W.3d at 481.

 With respect to whether the claims of Abazi against Toussaint are "factually intertwined" with the other claims at issue, the record shows (1) Abazi alleges that during her employment, Toussaint made defamatory statements regarding a relationship between her and another employee of Ascendant and (2) Abazi's wrongful termination claim is based on allegations of conduct involving Toussaint's actions in his role at Ascendant. Therefore, Abazi's claims against Toussaint will involve development of facts relating to her claims against Ascendant. We conclude Abazi's claims against Toussaint are

"factually intertwined" with the arbitrable claims between Abazi and Ascendant or "otherwise touch upon the subject matter of the agreement containing the arbitration provision" such that Abazi's claims against Toussaint are subject to the arbitration provision. *See In re Prudential Sec. Inc.*, 159 S.W.3d at 283; *see also In re Bath Junkie Franchise, Inc.*, 246 S.W.3d 356, 366–67 (Tex.App.-Beaumont 2008, orig. proceeding) (where claim involved facts related to relationship that was integral to arbitrable claim, claims were factually intertwined).

We decide in favor of appellants on their first issue.

### B. Waiver of Arbitration

In their second issue, appellants contend the trial court erred by refusing to compel arbitration of all claims between Abazi and appellants because "Ascendant did not waive its right to arbitration by substantially invoking the judicial process nor did Abazi suffer any prejudice." According to appellants, "waiver is neither legally nor factually supported under this record."

Abazi contends the trial court "correctly accepted" her argument that Ascendant waived its right to arbitrate because (1) Ascendant took "substantial and purposeful steps toward resolving the claims related to [Abazi's] termination" prior to moving for arbitration and (2) Abazi "suffered prejudice" as a result of such actions because she was "forced to hire new counsel" to handle the "unexpected litigation."

"Waiver is a question of law that this Court reviews de novo." *Small v. Specialty Contractors, Inc.*, 310 S.W.3d 639, 644 (Tex.App.-Dallas 2010, no pet.). "[A] party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment or prejudice." *Perry Homes v. Cull*, 258 S.W.3d 580, 589 (Tex.2008). "Due to the strong

presumption against waiver of arbitration, this hurdle is a high one." *Id.* To decide whether a party substantially invoked the judicial process, we look to the "totality of the circumstances." *Id.* at 591. In reviewing the totality of the circumstances, we consider "factors such as when the movant knew of the arbitration clause; how much discovery has been conducted; who initiated it; whether it related to the merits rather than arbitrability or standing; how much of it would be useful in arbitration; and whether the movant sought judgment on the merits." *Id.* at 591–92. "[W]aiver can be implied from a party's conduct, although that conduct must be unequivocal." *Id.* at 593. In close cases, the "strong presumption against waiver" should govern. *Id.* "Even substantially invoking the judicial process does not waive a party's arbitration rights unless the opposing party proves that it suffered prejudice as a result." *Id.* at 594. Prejudice is defined as "the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Id.* at 597.

Abazi asserts Ascendant substantially invoked the judicial process by taking the following actions: (1) filing a declaratory judgment action, (2) filing a motion for the immediate deposition of Abazi, and (3) giving Abazi notice of the date of the deposition. Ascendant argues (1) while it initiated the lawsuit, it did so only to seek a temporary restraining order to ensure the immediate return of confidential patient information and prevent disclosure of that information, which is specifically exempted from the scope of the arbitration provision; (2) while its original petition includes claims for affirmative relief, including declaratory relief, Ascendant did not conduct discovery or any sort of pretrial litigation

as to such claims; and (3) it was forced to request Abazi's deposition to ensure she had returned all documents containing confidential patient information, and had such deposition occurred it would have been conducted only to ensure compliance with the temporary restraining order.

The court in *Perry Homes* deemed the following acts, standing alone, insufficient to amount to waiver: filing suit; requesting initial discovery; noticing, but not taking a deposition; and taking four depositions. *Perry Homes*, 258 S.W.3d at 590; *see also Small*, 310 S.W.3d at 645. On the other hand, the Texas Supreme Court stated in another case that the combined acts of conducting full discovery, filing motions going to the merits, and seeking arbitration "only on the eve of trial" would constitute substantially invoking the judicial process. *Perry Homes*, 258 S.W.3d at 590 (citing *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 764 (Tex.2006)). Because this case does not fit squarely into the circumstances described in either of those cases, we "must review relevant factors in the context of the totality of the circumstances." *Small*, 310 S.W.3d at 645 (citing *Perry Homes*, 258 S.W.3d at 591–92).

First, we look at "when the movant knew of the arbitration clause." *Id.* at 645 n. 2, 646. Neither Ascendant nor Toussaint asserts they were unaware of the arbitration provision at any time relevant to this case. Second, we consider discovery: how much has been conducted, who initiated it, whether it related to the merits rather than arbitrability or standing, and how much of it would be useful in arbitration. *Id.* at 646. Ascendant filed a motion for expedited discovery in order to take Abazi's deposition, but did not actually proceed with the deposition. Further, while Ascendant sought and obtained a temporary restraining order directing Abazi to give Ascendant certain documents containing patient information, that order was submitted to the trial court by agreement of the parties. Third, we look at "whether the movant sought judgment on the merits." *Id.* at 647. The record does not show Ascendant sought judgment on the merits of the case such as by motion for summary judgment before moving to compel arbitration, nor does the record reflect there was an impending trial date.

In support of her position on this issue, Abazi cites *Holmes, Woods & Diggs v. Gentry*, 333 S.W.3d 650 (Tex.App.-Dallas 2009, no pet.), in which this Court concluded a law firm substantially invoked the litigation process when it initiated litigation against a former client and initially agreed to arbitration, then "aggressively" pursued litigation for two years before filing a motion to compel arbitration. Discovery in that case included mutual depositions as well as two sets of interrogatories and a request for production of documents served on the former client. *Id.* at 655. Before seeking arbitration, the law firm obtained a default judgment against the former client, pursued execution of the judgment, and actively opposed the former client's bill of review. *Id.* at 653. Because the facts at hand differ substantially from those in *Holmes, Woods & Diggs*, we do not find that case instructive.

Next, we consider Abazi's contention that she was prejudiced by Ascendant's actions because the nature of the lawsuit filed by Ascendant required her to hire trial counsel, file an answer, and assert her counterclaims. Aside from stating she was prejudiced, Abazi does not demonstrate how the filing of suit and hiring of counsel caused her prejudice. *See Perry Homes*, 258 S.W.3d at 597 (defining prejudice as "the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and

later seeks to arbitrate that same issue"). Further, Abazi grudgingly acknowledges Ascendant's claims brought against her "arguably" included non-arbitrable claims regarding confidential information. We construe her argument to relate to one of the express exclusions in the arbitration provision, i.e. "disputes involving any employee's obligations involving ... disclosure of information belonging to Ascendant." The record shows such claims are indeed a part of Ascendant's original petition.

■ On this record, considering the relevant factors in the context of the totality of the circumstances, we cannot conclude Ascendant's acts should be deemed to have "substantially invoked the judicial process enough to overcome the presumption against waiver." *See In re Vesta Ins. Group, Inc.,* 192 S.W.3d at 764; *see also Perry Homes,* 258 S.W.3d at 589–91; *Small,* 310 S.W.3d at 649. Further, we have not been shown how Abazi's need to hire counsel prejudiced her. *See Perry Homes,* 258 S.W.3d at 593, 597.

We decide in favor of appellants on their second issue.

### IV. CONCLUSION

We conclude (1) the arbitration provision at issue encompasses claims involving former, as well as current, employees of Ascendant; (2) Abazi's claims against Toussaint are subject to the arbitration provision; and (3) Ascendant did not waive its right to arbitrate the claims at issue. We decide appellants' two issues in their favor.

We reverse the trial court's order denying Ascendant's motion to compel arbitration, render judgment granting that motion, and remand this case to the trial court for further proceedings consistent with this opinion.