

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00276-CV

| | | |
|---|---|---|
| Richard Baumeister and Sanford, Baumeister & Frazier, LLP | § | From the 352nd District Court |
| | § | of Tarrant County (352-255054-11) |
| v. | § | February 14, 2013 |
| James Gary Reagan | § | Opinion by Chief Justice Livingston |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was error in the trial court's order. We reverse the trial court's order denying arbitration and a stay of the underlying proceedings, and we remand the case to the trial court to render an order in accordance with this opinion.

It is further ordered that appellee James Gary Reagan shall pay all of the costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS

By_____
Chief Justice Terrie Livingston



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00276-CV

RICHARD BAUMEISTER AND                                    APPELLANTS
SANFORD, BAUMEISTER &
FRAZIER, LLP

V.

JAMES GARY REAGAN                                        APPELLEE

----------

## FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

----------

## NO. 02-12-00277-CV

RICHARD BAUMEISTER AND                                    APPELLANTS
SANFORD, BAUMEISTER &
FRAZIER, PLLC F/K/A SANFORD,
BAUMEISTER & FRAZIER, LLP

V.

FASTLANE PARTNERS, LP AND                                 APPELLEES
DON SMITH

----------

## FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

----------

# MEMORANDUM OPINION[1]

----------

These two appeals from the trial court's orders denying arbitration arise from separate cause numbers in the same trial court and concern similar allegations involving investments in which Richard Baumeister was involved. We reverse and remand.

## Background

Appellee James G. Reagan sued Baumeister, a certified public accountant, and his firm, Sanford Baumeister & Frazier, PLLC (Sanford), for negligence, gross negligence, and breach of fiduciary duty. Reagan alleged that Baumeister informed Reagan, his client, that Reagan could invest as a partner in Allen 75 Partners, LP, which was to own real property for investment purposes. According to the petition, Baumeister told Reagan that the partnership which then owned the real property was being replaced and a new limited partnership, Allen 75, was being formed. Reagan alleged that Baumeister failed to disclose that he was a partner in the prior partnership and, as such, was going to make a substantial profit from the formation of Allen 75. Reagan further alleged that he would not have invested $400,000 in Allen 75 if he had known of Baumeister's interest in the prior partnership.

---

[1]*See* Tex. R. App. P. 47.4.

In a separate suit in the same trial court, Fastlane Partners, LP made substantially similar allegations: that Baumeister represented to Fastlane that it could invest as a new partner in Allen 75, that Baumeister failed to disclose that he was a partner in the prior partnership that owned the property and that he was going to make a substantial profit from the formation of Allen 75, and that Fastlane would not have invested $180,000 in Allen 75 if it had known of Baumeister's interest in the prior partnership. Based on these allegations, Fastlane brought a fraud claim against Baumeister and Sanford.

In that same suit, Don Smith and ANS Real Estate, Ltd. alleged that Baumeister advised ANS to engage in a like-kind exchange of property rather than sell property it owned and reinvest the proceeds of the sale elsewhere. According to ANS, based on Baumeister's and his firm's representations, it bought a half interest in a property located at 901 Houston Street; Houston Street Partners, LP, in which Don Smith invested as a limited partner, bought the other half interest. According to ANS and Smith, appellants failed to disclose that the Houston Street property had appraised for less than the purchase price, and they would not have purchased their interests in the property had they known. ANS and Smith brought claims against appellants for negligence, fraud, and excessive fees.

About eight months after the suits were filed, Baumeister filed a motion to compel arbitration in both suits as to Reagan's, Fastlane's, and Smith's claims against him and Sanford. According to Baumeister, the Allen 75 and Houston

3

Street limited partnership agreements (Agreements) contain provisions requiring arbitration of these claims. The trial court denied the motions to compel arbitration, and both appellants timely filed these interlocutory appeals.[2]

## Issues on Appeal

In both appeals, appellants bring two issues: (1) that the trial court erred by refusing to compel arbitration as to Reagan's, Fastlane's, and Smith's claims and (2) that the trial court erred by refusing to abate the underlying litigation pending arbitration.

## Whether Claims Must Be Arbitrated

In their first issue, appellants contend that because of the broad language of the arbitration clauses in the Agreements, any disputes arising from appellees' investment in the partnerships must be arbitrated.

### Applicable Law and Standard of Review

The FAA provides, in relevant part, that

> [a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

---

[2]Appellants contend that the Federal Arbitration Act (FAA) applies to this proceeding, which appellees do not dispute. *See* 9 U.S.C.A. §§ 1–16 (West 2009); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (West Supp. 2012) (permitting interlocutory appeal of order denying motion to compel arbitration under the FAA).

4

9 U.S.C.A. § 2. Section 2 of the FAA has been described as reflecting both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *Aldridge v. Thrift Fin. Mktg., LLC*, 376 S.W.3d 877, 881 (Tex. App.—Fort Worth 2012, no pet.) (quoting *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011)).

Under the FAA, a party seeking to compel arbitration must satisfy a two-pronged burden of proof in that it must first demonstrate the existence of a valid agreement to arbitrate the dispute and then prove that the claims asserted are within the scope of the agreement. *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006) (orig. proceeding); *Aldridge*, 376 S.W.3d at 882. If the party seeking arbitration carries its initial burden, the burden shifts to the opposite party to present evidence of an affirmative defense. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (orig. proceeding); *Aldridge*, 376 S.W.3d at 882.

An agreement to arbitrate is a contract, the relation of the parties is contractual, and the rights and liabilities of the parties are controlled by the law of contracts. *Aldridge*, 376 S.W.3d at 882. Because arbitration is generally a matter of contract, the FAA requires courts to honor parties' expectations. 9 U.S.C.A. §§ 1–16; *AT&T Mobility LLC*, 131 S. Ct. at 1752–53; *Aldridge*, 376 S.W.3d at 882.

When deciding whether parties agreed to arbitrate, courts should apply ordinary state law principles regarding the formation of contracts. *First Options*

*of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227–28 (Tex. 2003); *Aldridge*, 376 S.W.3d at 882–83.  In conducting such a review, a court "may not expand upon the terms of the contract or tolerate a liberal interpretation of it by reading into it a voluntary, consensual agreement to arbitrate when one otherwise does not exist."  *Aldridge*, 376 S.W.3d at 883; *In re Bates*, 177 S.W.3d 419, 422 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding).

In resolving disputes regarding interpretation of an arbitration agreement, courts apply standard principles of contract interpretation and construction.  *Aldridge*, 376 S.W.3d at 883.  The plain meaning of the contractual language should be looked to in order to ascertain the intent of the parties.  *Id.*  Although the language of the agreement must clearly indicate the intent to arbitrate, *Id.*; *Bates*, 177 S.W.3d at 422, courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration, *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding).

We review a trial court's determination regarding the validity of an agreement to arbitrate de novo as a question of law.  *J.M. Davidson*, 128 S.W.3d at 227; *Aldridge*, 376 S.W.3d at 882.

6

**Analysis**

According to Baumeister's motion to compel, arbitration of appellees' claims is required by section 9.1 of the Agreements:

ARTICLE IX

<u>ARBITRATION</u>

9.1    <u>Arbitration</u>. Any dispute or controversy arising out of, under, in connection with or in relation to this Agreement that has not been or cannot be resolved under Section 9.1 shall be exclusively resolved by arbitration by the American Arbitration Association in Fort Worth, Texas pursuant to the commercial arbitration rules then pertaining to the Fort Worth, Texas area. Any such arbitration shall be conducted by a single arbitrator with experience in commercial real estate transactions and partnerships in Texas, who shall be an attorney currently admitted to practice and in good standing in the State of Texas. The arbitrator shall apply Texas law as though he/she were bound by applicable statutes and precedents in case law, and shall endeavor to decide the controversy as though he/she [were] a judge in a Texas court of law. The arbitrator shall render his/her decision in writing and shall specifically cite the statistics and precedents applied in recognizing his/her decision.

**Alleged Ambiguity**

Appellees first contend that the provision is ambiguous and circular because it refers to itself. In other words, appellees contend that the language, "[a]ny dispute or controversy arising out of, under, in connection with or in relation to this Agreement that has not been or cannot be resolved under Section 9.1," which section is the arbitration provision itself, means that any dispute that cannot be arbitrated must be resolved by arbitration. Section 9.1 does not refer to any method of dispute resolution other than arbitration.

7

When construing a contractual provision, we do not read it in vacuum; we review the provision in light of the entire contract. *See, e.g.*, *Clark v. Cotten Schmidt, L.L.P.*, 327 S.W.3d 765, 772–73 (Tex. App.—Fort Worth 2010, no pet.). If possible, we should avoid a construction that is unreasonable, oppressive, inequitable, or absurd. *Id.* at 772; *Pavecon, Inc. v. R-Com, Inc.*, 159 S.W.3d 219, 222 (Tex. App.—Fort Worth 2005, no pet.). Language should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987); *Clark*, 327 S.W.3d at 773.

We construe the provision as requiring that disputes related to the Agreements that are not able to be resolved by the parties must, under section 9.1, the arbitration provision, be referred to arbitration. Even if the language were circular—i.e., if disputes remain unresolved under the arbitration provision, they must be referred to arbitration—it would nevertheless evidence a clear intent to arbitrate unresolved disputes in lieu of any other method of dispute resolution. Thus, we conclude and hold that section 9.1 does not fail for ambiguity. *See RSI Int'l, Inc. v. CTC Transp., Inc.*, 291 S.W.3d 104, 107, 109 (Tex. App.—Fort Worth 2009, no pet.) ("[F]or an ambiguity to exist when the parties advance conflicting interpretations, both interpretations must be reasonable.").

**Scope of Arbitration Clause**

Next, appellees contend that appellants' claims do not fall within the scope of the arbitration clauses in the Agreements. To determine whether a claim falls within the scope of an arbitration clause, courts must "focus on the factual allegations of the complaint, rather than the legal causes of action asserted." *In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011) (orig. proceeding). We consider whether the facts alleged are intertwined with the contract containing the arbitration clause. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992) (orig. proceeding). If the facts alleged "touch matters," have a "significant relationship" to, are "inextricably enmeshed" with, or are "factually intertwined" with the contract containing the arbitration agreement, the claim is arbitrable. *Cotton Commercial USA, Inc. v. Clear Creek ISD*, No. 14-12-00272-CV, 2012 WL 5395929, at *7 (Tex. App.—Houston [14th Dist.] Nov. 6, 2012, no pet.); *Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, orig. proceeding). But "[i]f the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract, the claim is not subject to arbitration." *Cotton Commercial*, 2012 WL 5395929, at *7; *Pennzoil*, 30 S.W.3d at 498. Parties to arbitration agreements cannot avoid them by casting their claims in tort, rather than in contract. *See Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir.), *cert. denied*, 531 U.S. 1013 (2000).

9

Here, the factual allegations are that Baumeister, as appellees' CPA and as an officer of Sanford, advised appellees to invest in limited partnerships in which he had financial interests—and which would own properties in which he had financial interests—without disclosing the extent of his financial interests, potential profit (as to Allen 75), and soundness of the investment (as to Houston Street).

In the two Agreements, Baumeister was listed as the registered agent for the general partner and the person to whom legal notices for the general partner were to be sent, and he was also listed as a limited partner. The Agreements contained representations that each limited partner was a sophisticated investor, that each limited partner had "been furnished with sufficient written and oral information about the Partnership[s], and the property to be purchased to allow him to make an informed investment decision prior to purchasing an interest in the Partnership[s], and [had] been furnished access to any additional information that he may require." They also further provided that each limited partner "agrees to hold the General Partner and the Limited Partners and their respective successors, assigns, harmless and to indemnify them against all liabilities, costs, and expenses incurred by them as a result of any breach of the foregoing representations."

Appellees contend that appellants' tort claims are not arbitrable because they are not "so interwoven with the contract or agreement containing the arbitration provision that the claim cannot be maintained without reference to the

10

terms of the contract or agreement." They also contend that their claims do not rely on the terms of the Agreements or allege that Baumeister breached the Agreements in any way, but rather arise solely from his independent tort duties owed as their CPA.

The presumption of arbitrability is particularly applicable when the clause is broad as it is here; a clause is broad if it provides for arbitration of "any dispute arising between the parties," or "any controversy or claim arising out of or relating to the contract thereof," or "any controversy concerning the interpretation, performance or application of the contract." *Cotton Commercial*, 2012 WL 5395929, at *7; *Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225, 230 (Tex. App.—Houston [14th Dist.] 1993, writ denied). When such a broad clause exists, "absent any express provision excluding a particular grievance from arbitration, only the most forceful evidence of purpose to exclude the claim from arbitration can prevail." *Cotton Commercial*, 2012 WL 5395929, at *7; *Ascendant Anesthesia PLLC v. Abazi*, 348 S.W.3d 454, 461 (Tex. App.—Dallas 2011, no pet.). And an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Ascendant Anesthesia*, 348 S.W.3d at 461 (quoting *BDO Seidman, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 852, 857 (Tex. App.—Dallas 2010, no pet.)).

Here, appellees claims against Baumeister are not independent of the Agreements and are "related to" them. Although appellees allege that

11

Baumeister had been their CPA for many years independently of the Agreements—and the basis of their claims is his allegedly faulty or deceptive advice and counsel—their claims are based on his alleged advice and nondisclosure *related to the investments represented by the Agreements*. Although the matters appellees complain of took place before the Agreements were executed, they nevertheless are intextricably enmeshed and factually intertwined with the Agreements, the execution of which was the end result of Baumeister's professional services. *See, e.g.*, *Rubiola*, 334 S.W.3d at 226; *Capitol Income Props.-LXXX v. Blackmon*, 843 S.W.2d 22, 23 (Tex. 1992) (orig. proceeding) ("It is also undisputed that the Plaintiffs claim that CIP breached its fiduciary duty to them in operating and managing the partnership, in repeatedly misrepresenting the financial health of the operation, *and in fraudulently inducing them to invest in the partnership*. These claims arise out of *and relate to* the limited partnership agreement." (emphasis added)); *cf. In re NEXT Fin. Group, Inc.*, 271 S.W.3d 263, 267–70 (Tex. 2008) (orig. proceeding) (holding common law *Sabine Pilot* claim of securities broker against his nonsignatory former employer arbitrable because within scope of arbitration agreement between broker and National Association of Securities Dealers, which broker agreed to when registering with NASD). Additionally, Smith's claim for excessive fees[3] seeks to recover what he claims are excessive fees charged by Sanford to the

___

[3]Although appellants sought to stay ANS's claims pending arbitration, they did not seek to arbitrate those claims.

limited partnership to manage the Houston Street property; the general partner's ability to engage and pay for such services is spelled out in that Agreement.

The language of the Agreements as a whole—which do not conceal Baumeister's role in the partnerships—evidences an intent that the Agreements contemplate the resolution of matters involving the limited partners' decision to invest in the limited partnership. In other words, appellees' claims are that Baumeister misused his position as their CPA to induce them to invest in limited partnerships and if they had not invested in those limited partnerships, they would not have been damaged; under the plain language of the arbitration clauses, it is difficult to see how these claims are not at least "related to" the Agreements themselves. *See ConocoPhillips Co. v. Graham*, No. 01-11-00503-CV, 2012 WL 1059084, at *8–9 (Tex. App.—Houston [1st Dist.] Mar. 29, 2012, no pet.) (mem. op.) (rejecting argument that appellees' claims arose from appellant's general tort duty to them when their claims arose from their employment, which was subject to arbitration agreement). Moreover, because the Agreements contain indemnity provisions related to the other partners, appellants may conceivably attempt to rely on them for potential defenses.

The cases appellees cite are not controlling. *Carr* involved an arbitration agreement that was limited to disputes between the parties and involved a signatory attempting to compel a nonsignatory plaintiff to arbitration. *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 498 (Tex. App.—Dallas 2011, pet. denied). *Woodhaven Homes* involved two contracts for the sale of property and

construction of a home; the arbitration provision was contained in the contract for the home that the plaintiffs never purchased, instead buying the other home. The contract for the home they actually bought did not contain an arbitration provision. *Woodhaven Homes, Inc. v. Alford*, 143 S.W.3d 202, 204–06 (Tex. App.—Dallas 2004, no pet.). The language of the arbitration provision in *Osornia* was more limited than the language in the Agreements. *Osornia v. AmeriMex Motors & Controls, Inc.*, 367 S.W.3d 707, 712–13 (Tex. App.—Houston [14th Dist.] 2012, no pet.). *Fridl* and *Hearthshire Braeswood Plaza* are similar, but they are still factually distinguishable. In both of those cases, the plaintiffs were alleging actions by the signatory defendants that caused the plaintiffs to become involved in transactions separate from and outside of the contracts in which the arbitration clauses were contained. *Fridl v. Cook*, 908 S.W.2d 507, 512–13 (Tex. App.—El Paso 1995, writ dism'd w.o.j.); *Hearthshire Braeswood Plaza Ltd. P'ship v. Bill Kelly Co.*, 849 S.W.2d 380, 391 (Tex. App.—Houston [14th Dist.] 1993, writ denied). But here the alleged actions of appellants culminated in the Agreements containing the arbitration clauses.

This is admittedly a close, factually unique case. But when faced with a broad, nonexclusionary arbitration clause and a dispute that is conceivably "related to" the Agreements at issue, we must defer on the side of arbitrability. Although, as alleged by appellees, the manner in which the arbitration agreement was procured is troubling, we cannot say with "positive assurance" that appellees' claims are not arbitrable. Accordingly, we are constrained—by the

14

plain language of the Agreements and the FAA's favorable policy regarding arbitration—to conclude and hold that the trial court erred by refusing to compel arbitration of appellees' claims.

Likewise, because appellees' allegations against Sanford arise out of a vicarious liability theory, and do not involve any additional or separate allegations from the allegations against Baumeister individually, they likewise are arbitrable.[4] *See Rubiola*, 334 S.W.3d at 224–25; *Ascendant Anesthesia*, 348 S.W.3d at 462 (holding claims against nonsignatory agent arbitrable because based on his actions related to his role at signatory principal, against whom arbitrable claims were alleged); *Dennis v. College Station Hosp., L.P.*, 169 S.W.3d 282, 287 (Tex. App.—Waco 2005, pet. denied) (holding claims against nonsignatory agent, although otherwise not arbitrable, were arbitrable because factually intertwined with arbitrable claims against signatory principal defendant); *In re Prudential Sec., Inc.*, 159 S.W.3d 279, 283 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding); *Brown v. Anderson*, 102 S.W.3d 245, 250 (Tex. App.—Beaumont 2003, pet. denied) ("Where the causes of action against the non-signatory defendants are based upon the same operative facts and are inherently

---

[4]Appellees contend that Sanford has no standing to urge reversal of the trial court's order on appeal because it did not move for arbitration. But Baumeister moved for arbitration of all claims, including specifically those against Sanford; appellees did not object or specially except. Sanford's and Baumeister's notice of appeal invoked our jurisdiction over all parties. *See* Tex. R. App. P. 25.1(b). Accordingly, Sanford has standing to challenge the trial court's order in this appeal. *See Ascendant Anesthesia*, 348 S.W.3d at 461–62.

15

inseparable from the causes of action against the signatory-defendant, the signatory-plaintiff may not avoid arbitration if invoked by the non-signatory defendants."). Moreover, the arbitration provision in the Agreements here is not limited in scope to disputes arising solely between the parties. *See In re Bath Junkie Franchise, Inc.*, 246 S.W.3d 356, 364, 366 (Tex. App.—Beaumont 2008, orig. proceeding) (holding all claims, including claims against nonsignatory defendants, arbitrable when arbitration clause was broad—applying to "any dispute or controversy arising out of or relating to [the Franchise Agreement]"— and that plaintiff contended nonsignatory defendants acted with signatory defendant in alleged wrongful acts); *cf. Rubiola*, 334 S.W.3d at 224–25 (involving clause that expressly bound nonsignatory officers and agents of signatory to contract). Accordingly, we conclude and hold that the trial court erred by refusing to compel arbitration of the claims against Sanford as well. We sustain appellants' first issue.

### Whether Suit Must Be Abated Pending Arbitration

In their second issue, appellants contend the trial court also erred by failing to stay the underlying proceedings pending resolution of arbitration. Federal law requires courts to stay litigation of claims that are subject to arbitration until arbitration is completed. 9 U.S.C.A. § 3; *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 195–96 (Tex. 2007) (orig. proceeding). Even when a party has brought arbitrable claims against one party and claims not subject to arbitration against another party in the same lawsuit, courts should stay all litigation. *See In*

16

*re Merrill Lynch Trust Co.*, 235 S.W.3d at 195–96.  Accordingly, because we have determined that appellees' claims against appellants are subject to arbitration, we conclude and hold that the litigation must be stayed pending arbitration.  *See In re Helix Energy Solutions Group, Inc.*, 303 S.W.3d 386, 403 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding).  We sustain appellants' second issue.

## Conclusion

Having sustained both of appellants' issues, we reverse the trial court's order denying arbitration and a stay of the underlying proceedings, and we remand this cause to the trial court to render an order in accordance with this opinion.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

MCCOY, J., concurs without opinion.

DELIVERED:  February 14, 2013