REVERSE and RENDER; Opinion Filed April 5, 2013.



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

No. 05-12-00607-CV

**PHYTEL, INC., Appellant**

**V.**

**JAMES NEIL SMILEY, Appellee**

On Appeal from the 192nd Judicial District Court
Dallas County, Texas
Trial Court Cause No. 12-01010

## MEMORANDUM OPINION

Before Justices O'Neill, FitzGerald, and Lang-Miers
Opinion by Justice Lang-Miers

Phytel, Inc. filed this interlocutory appeal from the trial court's order denying Phytel's motion to compel arbitration. We conclude that the trial court erred by denying the motion. We issue this memorandum opinion pursuant to Texas Rule of Appellate Procedure 47.4 because the law to be applied in the case is well settled. We reverse the trial court's order and render judgment granting Phytel's motion to compel arbitration.

**Background**

James Neil Smiley is the former CEO of Phytel. Smiley and Phytel executed an Employment Agreement (Contract 1) that contained a noncompete restrictive covenant. About 17 months later, Smiley's employment at Phytel was terminated, and the parties executed a Separation Agreement and Release (Contract 2). Contract 2 referred to the noncompete covenant

in Contract 1 and acknowledged the covenant's continued enforceability. Contract 2 contained an arbitration clause.

Over a year after Smiley left Phytel, the parties executed another agreement (Contract 3) for Phytel's repurchase of its common stock owned by Smiley. Contract 3 stated that Phytel agreed to repurchase Smiley's stock in exchange for Smiley's reaffirmation of "his obligations under [Contract 2] in accordance with the terms thereof as such obligations are modified by the provisions of this Section 6." Section 6 amended the noncompete covenant. Contract 3 did not contain an arbitration clause.

About three years after the parties signed Contract 3, Smiley filed this declaratory judgment action seeking a declaration that the noncompete covenant was unenforceable. Phytel moved to compel arbitration. Smiley argued that his claims were not subject to an arbitration agreement. The trial court denied Phytel's motion to compel arbitration, and this interlocutory appeal followed.

### Standard of Review

The parties do not state whether this interlocutory appeal is governed by the federal or state arbitration act. Under both acts, we apply an abuse of discretion standard when reviewing an interlocutory order denying a motion to compel arbitration. *Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 862–63 (Tex. App.—Dallas 2010, no pet.). When the only dispute is one of law, we review the trial court's legal determinations de novo. *Id.* at 862 (quoting *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009)).

We "treat arbitration agreements as other contracts in applying the legal rules to interpret them." *In re Olshan Foundation Repair Co., LLC*, 328 S.W.3d 883, 889 (Tex. 2010). If the contract is not ambiguous, its meaning is a question of law for the court to decide. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). We examine the entire contract in

an attempt to harmonize its provisions, and we give effect to all its provisions so that none is rendered meaningless. *Id.* We presume the parties intended every contractual provision to have meaning. *Id.*

## Applicable Law

A party seeking to compel arbitration under either the federal or state arbitration act must establish the existence of a valid agreement to arbitrate under state law contract principles and show that the dispute falls within the scope of the arbitration agreement. *See id.* at 227–28. If the party seeking to compel arbitration proves that a valid arbitration agreement exists, the burden shifts to the party opposing arbitration to prove an affirmative defense to arbitration. *Id.* at 227; *see In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001).

## Discussion

### *Is there an agreement to arbitrate?*

Phytel argues that Smiley's claims must be arbitrated because Contract 2 has an arbitration clause and Smiley reaffirmed in Contract 3 his obligations under Contract 2. Contract 3 states:

> 6.1     Seller re-affirms his obligations under [Contract 2] in accordance with the terms thereof as such obligations are modified by the provisions of this Section 6.

Phytel argues that the plain language of Section 6.1 means that the parties incorporated into Contract 3 the obligations in Contract 2, including the obligation to arbitrate disputes arising out of Contract 2. Smiley, on the other hand, contends that the only obligations he reaffirmed in Section 6.1 are those in Section 3 of Contract 2 entitled "Continuing Obligations," which does not contain an arbitration clause. He also appears to contend that Contract 3 had to refer to the specific number and title of the section in Contract 2 containing the arbitration clause in order to incorporate it.

General principles of Texas contract law allow provisions from other documents to be incorporated into a contract. *See PER Group, L.P. v. Dava Oncology, L.P.*, 294 S.W.3d 378, 385 (Tex. App.—Dallas 2009, no pet.). The incorporated provision then becomes a part of the contract into which it was incorporated. *Id.* (citing *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007) (orig. proceeding) (per curiam)). The language used to incorporate another document is not important as long as the contract clearly refers to the incorporated document. *See Tribble & Stephens Co. v. RGM Constructors, L.P.*, 154 S.W.3d 639, 663 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). When a document is incorporated into another by reference, both documents must be read and construed together. *Id.*

Section 6.1 does not refer to "Section 3" or "Continuing Obligations." And Contract 2 contains more obligations than those stated in the "Continuing Obligations" section. It includes obligations concerning Phytel's severance payments to Smiley, Smiley's insurance benefits, consulting services, release of claims, confidentiality, non-disparagement, and arbitration. Based on the plain language of Section 6.1, we conclude that Smiley reaffirmed all obligations under Contract 2, not just those listed in the "Continuing Obligations" section. And by referring to and reaffirming the obligations in Contract 2, the parties incorporated those obligations into Contract 3. *See Dava Oncology*, 294 S.W.3d at 385–86; *Tribble & Stephens*, 154 S.W.3d at 663. One of those obligations is to arbitrate disputes arising out of or relating to Contract 2. Construing the two documents together, we conclude that Contract 3 incorporated Smiley's obligation to arbitrate disputes arising out of or relating to Contract 2.

***Do the claims fall within the scope of the arbitration agreement?***

Phytel argues that Smiley's claims arise out of or relate to Contract 2 because Contract 2 contained the noncompete covenant, as amended by Contract 3, and Smiley's claims concern the enforceability of the noncompete covenant. Smiley argues that the arbitration clause does not

apply here because his claims do not arise from Contract 2. He contends that his claims arise solely from Contract 3 because that is the only agreement in which the amended noncompete covenant appears in full. He contends that the amended noncompete covenant is "new," appears "for the first time" in Contract 3, and has "no relation" to Contract 2. We agree with Phytel.

The noncompete covenant originated in Contract 1. It was later incorporated into Contract 2 when the parties referred to the noncompete section of Contract 1 and agreed that it "shall continue in full force and effect" and "acknowledge[d] the continued enforceability" of that section. Then when the parties signed Contract 3, they amended the terms of the noncompete covenant as expressed in Contract 1 and as incorporated into Contract 2. We previously concluded that the parties incorporated the obligations from Contract 2 into Contract 3. We also conclude that Contract 3 amended the noncompete covenant in Contract 2. *See Tribble & Stephens*, 154 S.W.3d at 663 (contracts must be construed together). Consequently, the noncompete covenant relates to all three agreements, and Smiley's argument that his claims arise solely from Contract 3 is not supported by the evidence.

We conclude that Phytel established the existence of a valid agreement to arbitrate and that Smiley's claims fall within the scope of the arbitration agreement. We next consider whether Smiley proved a defense to the arbitration agreement.

### Is there a defense to arbitration?

Smiley argued below that the merger clause in Contract 3 stated it "constitutes the entire agreement between the parties." He argues that Contract 3 does not contain an arbitration clause and the merger clause does not specifically incorporate an arbitration clause from a prior agreement. Phytel argues that the merger clause includes the obligations from Contract 2, including the arbitration clause, because those obligations were incorporated by reference into Contract 3.

The merger clause in Contract 3 states, in relevant part:

> 7.4  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes any and all previous and/or contemporaneous oral agreements, negotiations, commitments and writings of the parties with respect to such matter . . . .

When the parties reaffirmed in Contract 3 the "obligations under" Contract 2, those obligations, including the arbitration clause, became part of "[t]his Agreement" referred to in the merger clause of Contract 3. *See Tribble & Stephens*, 154 S.W.3d at 663. And nothing in the language of the merger clause of Contract 3 shows it was intended to terminate or revoke the arbitration clause in Contract 2. *See Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 586–87 (Tex. App.—Houston [14th Dist.] 1999, no pet.). To construe the merger clause to exclude the incorporated provisions from Contract 2 would render Section 6.1 meaningless.

Smiley also argued below that Phytel substantially invoked the judicial process and waived its right to compel arbitration by filing an answer, pursuing discovery, moving for a continuance, and failing to request arbitration in a timely manner, and that he was prejudiced. Although the trial court orally stated it would not deny arbitration based on the waiver argument, the written order denying arbitration did not state a basis for the ruling. Phytel argues that the record does not support an "unequivocal intent by Phytel to waive arbitration."

A party may waive an arbitration clause by substantially invoking the judicial process to the detriment of the other party. *Perry Homes v. Cull*, 258 S.W.3d 580, 589 (Tex. 2008). We review de novo the question whether a party has waived an arbitration clause. *Small v. Specialty Contractors, Inc.*, 310 S.W.3d 639, 644 (Tex. App.—Dallas 2010, no pet.). Texas has a strong presumption against waiver. *Perry Homes*, 258 S.W.3d 589–90. The standard for determining waiver is the same under federal and state law. *See Small*, 310 S.W.3d at 645. As the party claiming waiver, Smiley had the heavy burden of establishing that Phytel substantially invoked the judicial process and that he was prejudiced. *Perry Homes*, 258 S.W.3d at 595.

In determining whether a party waived arbitration, we look at the totality of the circumstances. *Id.* at 590. Factors we consider in determining whether the movant waived arbitration include when the movant knew about the arbitration clause, the extent of discovery and who initiated it, whether the discovery would be useful in arbitration, filing motions on the merits, and seeking arbitration on the eve of trial. *See id.* at 590–93; *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 764 (Tex. 2006). Because arbitration is a matter of contract and can be waived if the parties agree, the conduct must be unequivocal that waiver was intended. *Perry Homes*, 258 S.W.3d at 593.

The record does not show whether Phytel was aware of the arbitration clause when the lawsuit was filed. The record does show, however, that Phytel moved to compel arbitration just over two months after the lawsuit was filed and nine months before the date set for a nonjury trial. It also shows that the parties exchanged one set of discovery and the standard disclosures, that Phytel did not file a motion on the merits, that Phytel participated in a one-day mediation early in the litigation process, that Phytel responded to Smiley's application for temporary restraining order and permanent injunction, and that Phytel did not respond to Smiley's motion for partial summary judgment and instead asked the court to postpone a hearing on the motion because of the pending motion to compel arbitration. To summarize, the record shows that the parties did not engage in extensive discovery, Phytel did not file any merits-based motions, and Phytel filed its motion to compel arbitration early in the litigation process. *See Ascendant Anesthesia PLLC v. Abazi*, 348 S.W.3d 454, 464–65 (Tex. App.—Dallas 2011, no pet.); *Small*, 310 S.W.3d at 645–47. Based on the record, we conclude that Smiley did not establish that Phytel substantially invoked the judicial process.

Additionally, Smiley did not present evidence that he suffered prejudice. Prejudice means "the inherent unfairness in terms of delay, expense, or damage to a party's legal position that

occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Perry Homes*, 258 S.W.3d at 597. Smiley's only argument was that he "has already incurred thousands of dollars in legal fees [and] [i]f arbitration is compelled, then he will incur some of these legal fees all over again in the arbitration proceeding plus additional legal fees and costs." Smiley did not offer evidence of the amount of his legal fees and stated only that the fees were related to the mediation. *See Small*, 310 S.W.3d at 648. He also did not offer any evidence that the discovery or work product prepared for the mediation could not be used in arbitration. *See id.* We conclude that Smiley did not satisfy his burden to show prejudice.

Smiley also raises the defenses of unconscionability and lack of mutuality of obligations in his appellate brief. Because Smiley did not raise these defenses below, we do not consider them. *See* TEX. R. APP. P. 33.1. We resolve appellant's sole issue in its favor.

## Conclusion

We reverse the trial court's order denying Phytel, Inc.'s motion to compel arbitration, render judgment granting the motion, and remand to the trial court for further proceedings consistent with this opinion.

ELIZABETH LANG-MIERS
JUSTICE

120607F.P05

-8-



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

PHYTEL, INC., Appellant

No. 05-12-00607-CV        V.

JAMES NEIL SMILEY, Appellee

On Appeal from the 192nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 12-01010.
Opinion delivered by Justice Lang-Miers,
Justices O'Neill and FitzGerald
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that Phytel, Inc.'s motion to compel arbitration is **GRANTED**. We remand the cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant Phytel, Inc. recover its costs of this appeal from appellee James Neil Smiley.

Judgment entered this 5th day of April, 2013.

ELIZABETH LANG-MIERS
JUSTICE