02-12-276 & 277-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00276-CV

 


 
 
 Richard
 Baumeister and Sanford, Baumeister & Frazier, LLP
  
  
 v.
  
 James
 Gary Reagan
 
 
 §
  
 §
  
 §
  
 §
 
 
 From the 352nd District
 Court
  
 of
 Tarrant County (352-255054-11)
  
 February
 14, 2013
  
 Opinion
 by Chief Justice Livingston
 
 


 

JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
error in the trial court’s order.  We reverse the trial court’s order denying
arbitration and a stay of the underlying proceedings, and we remand the case to
the trial court to render an order in accordance with this opinion.

It
is further ordered that appellee James Gary Reagan shall pay all of the costs
of this appeal, for which let execution issue.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

    Chief Justice Terrie Livingston

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00276-CV

 

 


 
 
 Richard Baumeister and Sanford, Baumeister &
 Frazier, LLP
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 James Gary Reagan
 
 
  
 
 
 APPELLEE
 
 


 

----------

FROM THE 352nd
District Court OF Tarrant COUNTY

----------

NO. 02-12-00277-CV

 

 


 
 
 Richard Baumeister and Sanford, Baumeister &
 Frazier, PLLC f/k/a Sanford, Baumeister & Frazier, LLP
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Fastlane Partners, LP and Don Smith
 
 
  
 
 
 APPELLEES
 
 


 

----------

FROM THE 352nd
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

          These
two appeals from the trial court’s orders denying arbitration arise from
separate cause numbers in the same trial court and concern similar allegations
involving investments in which Richard Baumeister was involved.  We reverse and
remand.

Background

          Appellee
James G. Reagan sued Baumeister, a certified public accountant, and his firm,
Sanford Baumeister & Frazier, PLLC (Sanford), for negligence, gross
negligence, and breach of fiduciary duty.  Reagan alleged that Baumeister
informed Reagan, his client, that Reagan could invest as a partner in Allen 75
Partners, LP, which was to own real property for investment purposes. 
According to the petition, Baumeister told Reagan that the partnership which
then owned the real property was being replaced and a new limited partnership,
Allen 75, was being formed.  Reagan alleged that Baumeister failed to
disclose that he was a partner in the prior partnership and, as such, was going
to make a substantial profit from the formation of Allen 75.  Reagan further
alleged that he would not have invested $400,000 in Allen 75 if he had known of
Baumeister’s interest in the prior partnership.

          In
a separate suit in the same trial court, Fastlane Partners, LP made
substantially similar allegations:  that Baumeister represented to Fastlane
that it could invest as a new partner in Allen 75, that Baumeister failed to
disclose that he was a partner in the prior partnership that owned the property
and that he was going to make a substantial profit from the formation of Allen
75, and that Fastlane would not have invested $180,000 in Allen 75 if it had
known of Baumeister’s interest in the prior partnership.  Based on these
allegations, Fastlane brought a fraud claim against Baumeister and Sanford.

          In
that same suit, Don Smith and ANS Real Estate, Ltd. alleged that Baumeister
advised ANS to engage in a like-kind exchange of property rather than sell property
it owned and reinvest the proceeds of the sale elsewhere.  According to ANS,
based on Baumeister’s and his firm’s representations, it bought a half interest
in a property located at 901 Houston Street; Houston Street Partners, LP, in
which Don Smith invested as a limited partner, bought the other half interest. 
According to ANS and Smith, appellants failed to disclose that the Houston
Street property had appraised for less than the purchase price, and they would
not have purchased their interests in the property had they known.  ANS and
Smith brought claims against appellants for negligence, fraud, and excessive
fees.

          About
eight months after the suits were filed, Baumeister filed a motion to compel
arbitration in both suits as to Reagan’s, Fastlane’s, and Smith’s claims
against him and Sanford.  According to Baumeister, the Allen 75 and Houston
Street limited partnership agreements (Agreements) contain provisions requiring
arbitration of these claims.  The trial court denied the motions to compel
arbitration, and both appellants timely filed these interlocutory appeals.[2]

Issues
on Appeal

In
both appeals, appellants bring two issues:  (1) that the trial court erred by refusing
to compel arbitration as to Reagan’s, Fastlane’s, and Smith’s claims and (2)
that the trial court erred by refusing to abate the underlying litigation
pending arbitration.

Whether
Claims Must Be Arbitrated

          In
their first issue, appellants contend that because of the broad language of the
arbitration clauses in the Agreements, any disputes arising from appellees’ investment
in the partnerships must be arbitrated.

Applicable
Law and Standard of Review

          The
FAA provides, in relevant part, that

          [a] written provision in . . . a contract
evidencing a transaction involving commerce to settle by arbitration a
controversy thereafter arising out of such contract . . . shall be valid,
irrevocable, and enforceable, save upon such grounds as exist at law or in
equity for the revocation of any contract.

9
U.S.C.A. § 2.  Section 2 of the FAA has been described as reflecting both a “liberal
federal policy favoring arbitration” and the “fundamental principle that
arbitration is a matter of contract.”  Aldridge v. Thrift Fin. Mktg., LLC,
376 S.W.3d 877, 881 (Tex. App.––Fort Worth 2012, no pet.) (quoting AT&T
Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011)).

          Under
the FAA, a party seeking to compel arbitration must satisfy a two-pronged
burden of proof in that it must first demonstrate the existence of a valid
agreement to arbitrate the dispute and then prove that the claims asserted are
within the scope of the agreement.  In re Dillard Dep’t Stores, Inc.,
186 S.W.3d 514, 515 (Tex. 2006) (orig. proceeding); Aldridge, 376 S.W.3d
at 882.  If the party seeking arbitration carries its initial burden, the
burden shifts to the opposite party to present evidence of an affirmative
defense.  In re AdvancePCS Health L.P., 172 S.W.3d 603, 607 (Tex. 2005)
(orig. proceeding); Aldridge, 376 S.W.3d at 882.

          An
agreement to arbitrate is a contract, the relation of the parties is
contractual, and the rights and liabilities of the parties are controlled by
the law of contracts.  Aldridge, 376 S.W.3d at 882.  Because arbitration
is generally a matter of contract, the FAA requires courts to honor parties’
expectations.  9 U.S.C.A. §§ 1–16; AT&T Mobility LLC, 131 S. Ct.
at 1752–53; Aldridge, 376 S.W.3d at 882.

          When
deciding whether parties agreed to arbitrate, courts should apply ordinary
state law principles regarding the formation of contracts.  First Options of
Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995); J.M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 227–28 (Tex. 2003); Aldridge,
376 S.W.3d at 882–83.  In conducting such a review, a court “may not expand
upon the terms of the contract or tolerate a liberal interpretation of it by
reading into it a voluntary, consensual agreement to arbitrate when one
otherwise does not exist.”  Aldridge, 376 S.W.3d at 883; In re Bates,
177 S.W.3d 419, 422 (Tex. App.––Houston [1st Dist.] 2005, orig. proceeding).

In
resolving disputes regarding interpretation of an arbitration agreement, courts
apply standard principles of contract interpretation and construction.  Aldridge,
376 S.W.3d at 883.  The plain meaning of the contractual language should be
looked to in order to ascertain the intent of the parties.  Id.  Although
the language of the agreement must clearly indicate the intent to arbitrate, Id.;
Bates, 177 S.W.3d at 422, courts must resolve any doubts about an arbitration
agreement’s scope in favor of arbitration, In re FirstMerit Bank, N.A.,
52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding).

          We
review a trial court’s determination regarding the validity of an agreement to
arbitrate de novo as a question of law.  J.M. Davidson, 128 S.W.3d at
227; Aldridge, 376 S.W.3d at 882.

Analysis

          According
to Baumeister’s motion to compel, arbitration of appellees’ claims is required
by section 9.1 of the Agreements:

ARTICLE
IX

 

ARBITRATION

 

9.1     Arbitration. Any
dispute or controversy arising out of, under, in connection with or in relation
to this Agreement that has not been or cannot be resolved under Section 9.1
shall be exclusively resolved by arbitration by the American Arbitration
Association in Fort Worth, Texas pursuant to the commercial arbitration rules
then pertaining to the Fort Worth, Texas area.  Any such arbitration shall be
conducted by a single arbitrator with experience in commercial real estate
transactions and partnerships in Texas, who shall be an attorney currently
admitted to practice and in good standing in the State of Texas.  The
arbitrator shall apply Texas law as though he/she were bound by applicable statutes
and precedents in case law, and shall endeavor to decide the controversy as
though he/she [were] a judge in a Texas court of law.  The arbitrator shall
render his/her decision in writing and shall specifically cite the statistics
and precedents applied in recognizing his/her decision.

          Alleged
Ambiguity

          Appellees
first contend that the provision is ambiguous and circular because it refers to
itself.  In other words, appellees contend that the language, “[a]ny dispute or
controversy arising out of, under, in connection with or in relation to this
Agreement that has not been or cannot be resolved under Section 9.1,” which
section is the arbitration provision itself, means that any dispute that cannot
be arbitrated must be resolved by arbitration.  Section 9.1 does not refer to
any method of dispute resolution other than arbitration.

          When
construing a contractual provision, we do not read it in vacuum; we review the
provision in light of the entire contract.  See, e.g., Clark v.
Cotten Schmidt, L.L.P., 327 S.W.3d 765, 772–73 (Tex. App.––Fort Worth 2010,
no pet.).  If possible, we should avoid a construction that is unreasonable,
oppressive, inequitable, or absurd.  Id. at 772; Pavecon, Inc. v.
R-Com, Inc., 159 S.W.3d 219, 222 (Tex. App.––Fort Worth 2005, no pet.). 
Language should be given its plain grammatical meaning unless it definitely
appears that the intention of the parties would thereby be defeated.  Reilly
v. Rangers Mgmt., Inc., 727 S.W.2d 527, 529 (Tex. 1987); Clark, 327
S.W.3d at 773.

          We
construe the provision as requiring that disputes related to the Agreements
that are not able to be resolved by the parties must, under section 9.1, the
arbitration provision, be referred to arbitration.  Even if the language were circular––i.e.,
if disputes remain unresolved under the arbitration provision, they must be
referred to arbitration––it would nevertheless evidence a clear intent to
arbitrate unresolved disputes in lieu of any other method of dispute
resolution.  Thus, we conclude and hold that section 9.1 does not fail for
ambiguity.  See RSI Int’l, Inc. v. CTC Transp., Inc., 291 S.W.3d 104,
107, 109 (Tex. App.––Fort Worth 2009, no pet.) (“[F]or an ambiguity to exist
when the parties advance conflicting interpretations, both interpretations must
be reasonable.”).

          Scope
of Arbitration Clause

          Next,
appellees contend that appellants’ claims do not fall within the scope of the
arbitration clauses in the Agreements.  To determine whether a claim falls
within the scope of an arbitration clause, courts must “focus on the factual
allegations of the complaint, rather than the legal causes of action asserted.” 
In re Rubiola, 334 S.W.3d 220, 225 (Tex. 2011) (orig. proceeding).  We
consider whether the facts alleged are intertwined with the contract containing
the arbitration clause.  Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266,
271 (Tex. 1992) (orig. proceeding).  If the facts alleged “touch matters,” have
a “significant relationship” to, are “inextricably enmeshed” with, or are “factually
intertwined” with the contract containing the arbitration agreement, the claim
is arbitrable.  Cotton Commercial USA, Inc. v. Clear Creek ISD, No.
14-12-00272-CV, 2012 WL 5395929, at *7 (Tex. App.––Houston [14th Dist.] Nov. 6,
2012, no pet.); Pennzoil Co. v. Arnold Oil Co., 30 S.W.3d 494, 498 (Tex.
App.––San Antonio 2000, orig. proceeding).  But “[i]f the facts alleged in
support of the claim stand alone, are completely independent of the contract,
and the claim could be maintained without reference to the contract, the claim
is not subject to arbitration.”  Cotton Commercial, 2012 WL 5395929, at
*7; Pennzoil, 30 S.W.3d at 498.  Parties to arbitration agreements
cannot avoid them by casting their claims in tort, rather than in contract.  See
Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524, 526 (5th Cir.), cert.
denied, 531 U.S. 1013 (2000).

          Here,
the factual allegations are that Baumeister, as appellees’ CPA and as an
officer of Sanford, advised appellees to invest in limited partnerships in which
he had financial interests––and which would own properties in which he had
financial interests––without disclosing the extent of his financial interests,
potential profit (as to Allen 75), and soundness of the investment (as to
Houston Street).

          In
the two Agreements, Baumeister was listed as the registered agent for the
general partner and the person to whom legal notices for the general partner
were to be sent, and he was also listed as a limited partner.  The Agreements
contained representations that each limited partner was a sophisticated
investor, that each limited partner had “been furnished with sufficient written
and oral information about the Partnership[s], and the property to be purchased
to allow him to make an informed investment decision prior to purchasing an
interest in the Partnership[s], and [had] been furnished access to any
additional information that he may require.”  They also further provided that
each limited partner “agrees to hold the General Partner and the Limited Partners
and their respective successors, assigns, harmless and to indemnify them
against all liabilities, costs, and expenses incurred by them as a result of
any breach of the foregoing representations.”

          Appellees
contend that appellants’ tort claims are not arbitrable because they are not
“so interwoven with the contract or agreement containing the arbitration
provision that the claim cannot be maintained without reference to the terms of
the contract or agreement.”  They also contend that their claims do not rely on
the terms of the Agreements or allege that Baumeister breached the Agreements
in any way, but rather arise solely from his independent tort duties owed as
their CPA.

          The
presumption of arbitrability is particularly applicable when the clause is
broad as it is here; a clause is broad if it provides for arbitration of “any
dispute arising between the parties,” or “any controversy or claim arising out
of or relating to the contract thereof,” or “any controversy concerning the
interpretation, performance or application of the contract.”  Cotton
Commercial, 2012 WL 5395929, at *7; Babcock & Wilcox Co. v. PMAC,
Ltd., 863 S.W.2d 225, 230 (Tex. App.––Houston [14th Dist.] 1993, writ
denied).  When such a broad clause exists, “absent any express provision
excluding a particular grievance from arbitration, only the most forceful
evidence of purpose to exclude the claim from arbitration can prevail.”  Cotton
Commercial, 2012 WL 5395929, at *7; Ascendant Anesthesia PLLC v. Abazi,
348 S.W.3d 454, 461 (Tex. App.––Dallas 2011, no pet.).  And an “order to
arbitrate the particular grievance should not be denied unless it may be said
with positive assurance that the arbitration clause is not susceptible of an
interpretation that covers the asserted dispute.”  Ascendant Anesthesia,
348 S.W.3d at 461 (quoting BDO Seidman, LLP v. J.A. Green Dev. Corp.,
327 S.W.3d 852, 857 (Tex. App.––Dallas 2010, no pet.)).

          Here,
appellees claims against Baumeister are not independent of the Agreements and
are “related to” them.  Although appellees allege that Baumeister had been
their CPA for many years independently of the Agreements––and the basis of
their claims is his allegedly faulty or deceptive advice and counsel––their
claims are based on his alleged advice and nondisclosure related to the
investments represented by the Agreements.  Although the matters appellees
complain of took place before the Agreements were executed, they nevertheless
are intextricably enmeshed and factually intertwined with the Agreements, the
execution of which was the end result of Baumeister’s professional services.  See,
e.g., Rubiola, 334 S.W.3d at 226; Capitol Income Props.-LXXX v.
Blackmon, 843 S.W.2d 22, 23 (Tex. 1992) (orig. proceeding) (“It is also
undisputed that the Plaintiffs claim that CIP breached its fiduciary duty to
them in operating and managing the partnership, in repeatedly misrepresenting
the financial health of the operation, and in fraudulently inducing them to
invest in the partnership.  These claims arise out of and relate to
the limited partnership agreement.” (emphasis added)); cf. In re NEXT Fin.
Group, Inc., 271 S.W.3d 263, 267–70 (Tex. 2008) (orig. proceeding) (holding
common law Sabine Pilot claim of securities broker against his
nonsignatory former employer arbitrable because within scope of arbitration
agreement between broker and National Association of Securities Dealers, which
broker agreed to when registering with NASD).  Additionally, Smith’s claim for
excessive fees[3] seeks to recover what he
claims are excessive fees charged by Sanford to the limited partnership to
manage the Houston Street property; the general partner’s ability to engage and
pay for such services is spelled out in that Agreement.

The
language of the Agreements as a whole––which do not conceal Baumeister’s role in
the partnerships––evidences an intent that the Agreements contemplate the
resolution of matters involving the limited partners’ decision to invest in the
limited partnership.  In other words, appellees’ claims are that Baumeister
misused his position as their CPA to induce them to invest in limited
partnerships and if they had not invested in those limited partnerships, they
would not have been damaged; under the plain language of the arbitration
clauses, it is difficult to see how these claims are not at least “related to”
the Agreements themselves.  See ConocoPhillips Co. v. Graham, No. 01-11-00503-CV,
2012 WL 1059084, at *8–9 (Tex. App.––Houston [1st Dist.] Mar. 29, 2012, no
pet.) (mem. op.) (rejecting argument that appellees’ claims arose from appellant’s
general tort duty to them when their claims arose from their employment, which
was subject to arbitration agreement).  Moreover, because the Agreements
contain indemnity provisions related to the other partners, appellants may conceivably
attempt to rely on them for potential defenses.

          The
cases appellees cite are not controlling.  Carr involved an arbitration
agreement that was limited to disputes between the parties and involved a
signatory attempting to compel a nonsignatory plaintiff to arbitration.  Carr
v. Main Carr Dev., LLC, 337 S.W.3d 489, 498 (Tex. App.––Dallas 2011, pet.
denied).  Woodhaven Homes involved two contracts for the sale of
property and construction of a home; the arbitration provision was contained in
the contract for the home that the plaintiffs never purchased, instead buying
the other home.  The contract for the home they actually bought did not contain
an arbitration provision.  Woodhaven Homes, Inc. v. Alford, 143 S.W.3d
202, 204–06 (Tex. App.––Dallas 2004, no pet.).  The language of the arbitration
provision in Osornia was more limited than the language in the
Agreements.  Osornia v. AmeriMex Motors & Controls, Inc., 367 S.W.3d
707, 712–13 (Tex. App.––Houston [14th Dist.] 2012, no pet.).  Fridl and Hearthshire
Braeswood Plaza are similar, but they are still factually distinguishable. 
In both of those cases, the plaintiffs were alleging actions by the signatory
defendants that caused the plaintiffs to become involved in transactions
separate from and outside of the contracts in which the arbitration clauses
were contained.  Fridl v. Cook, 908 S.W.2d 507, 512–13 (Tex. App.––El
Paso 1995, writ dism’d w.o.j.); Hearthshire Braeswood Plaza Ltd. P’ship v.
Bill Kelly Co., 849 S.W.2d 380, 391 (Tex. App.––Houston [14th Dist.] 1993,
writ denied).  But here the alleged actions of appellants culminated in the
Agreements containing the arbitration clauses.

This
is admittedly a close, factually unique case.  But when faced with a broad,
nonexclusionary arbitration clause and a dispute that is conceivably “related
to” the Agreements at issue, we must defer on the side of arbitrability. 
Although, as alleged by appellees, the manner in which the arbitration
agreement was procured is troubling, we cannot say with “positive assurance”
that appellees’ claims are not arbitrable.  Accordingly, we are constrained––by
the plain language of the Agreements and the FAA’s favorable policy regarding
arbitration––to conclude and hold that the trial court erred by refusing to
compel arbitration of appellees’ claims.

Likewise,
because appellees’ allegations against Sanford arise out of a vicarious
liability theory, and do not involve any additional or separate allegations
from the allegations against Baumeister individually, they likewise are
arbitrable.[4]  See Rubiola, 334
S.W.3d at 224–25; Ascendant Anesthesia, 348 S.W.3d at 462 (holding
claims against nonsignatory agent arbitrable because based on his actions
related to his role at signatory principal, against whom arbitrable claims were
alleged); Dennis v. College Station Hosp., L.P., 169 S.W.3d 282, 287
(Tex. App.––Waco 2005, pet. denied) (holding claims against nonsignatory agent,
although otherwise not arbitrable, were arbitrable because factually intertwined
with arbitrable claims against signatory principal defendant); In re
Prudential Sec., Inc., 159 S.W.3d 279, 283 (Tex. App.—Houston [14th Dist.]
2005, orig. proceeding); Brown v. Anderson, 102 S.W.3d 245, 250 (Tex.
App.––Beaumont 2003, pet. denied) (“Where the causes of action against the
non-signatory defendants are based upon the same operative facts and are
inherently inseparable from the causes of action against the
signatory-defendant, the signatory-plaintiff may not avoid arbitration if
invoked by the non-signatory defendants.”).  Moreover, the arbitration
provision in the Agreements here is not limited in scope to disputes arising
solely between the parties.  See In re Bath Junkie Franchise, Inc., 246
S.W.3d 356, 364, 366 (Tex. App.––Beaumont 2008, orig. proceeding) (holding all
claims, including claims against nonsignatory defendants, arbitrable when
arbitration clause was broad––applying to “any dispute or controversy arising
out of or relating to [the Franchise Agreement]”––and that plaintiff contended nonsignatory
defendants acted with signatory defendant in alleged wrongful acts); cf.
Rubiola, 334 S.W.3d at 224–25 (involving clause that expressly bound nonsignatory
officers and agents of signatory to contract).  Accordingly, we conclude and
hold that the trial court erred by refusing to compel arbitration of the claims
against Sanford as well.  We sustain appellants’ first issue.

Whether
Suit Must Be Abated Pending Arbitration

          In
their second issue, appellants contend the trial court also erred by failing to
stay the underlying proceedings pending resolution of arbitration.            Federal
law requires courts to stay litigation of claims that are subject to
arbitration until arbitration is completed.  9 U.S.C.A. § 3; In re Merrill
Lynch Trust Co. FSB, 235 S.W.3d 185, 195–96 (Tex. 2007) (orig. proceeding). 
Even when a party has brought arbitrable claims against one party and claims
not subject to arbitration against another party in the same lawsuit, courts
should stay all litigation.  See In re Merrill Lynch Trust Co., 235
S.W.3d at 195–96.  Accordingly, because we have determined that appellees’
claims against appellants are subject to arbitration, we conclude and hold that
the litigation must be stayed pending arbitration.  See In re Helix Energy
Solutions Group, Inc., 303 S.W.3d 386, 403 (Tex. App.––Houston [14th Dist.]
2010, orig. proceeding).  We sustain appellants’ second issue.

Conclusion

          Having
sustained both of appellants’ issues, we reverse the trial court’s order
denying arbitration and a stay of the underlying proceedings, and we remand
this cause to the trial court to render an order in accordance with this
opinion.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; MCCOY and GABRIEL, JJ.

 

MCCOY,
J., concurs without opinion.

 

DELIVERED:  February 14,
2013








 









[1]See Tex. R. App. P.
47.4.





[2]Appellants contend that
the Federal Arbitration Act (FAA) applies to this proceeding, which appellees
do not dispute.  See 9 U.S.C.A. §§ 1–16 (West 2009); see also
Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (West Supp. 2012) (permitting
interlocutory appeal of order denying motion to compel arbitration under the
FAA).





[3]Although appellants sought
to stay ANS’s claims pending arbitration, they did not seek to arbitrate those
claims.





[4]Appellees contend that
Sanford has no standing to urge reversal of the trial court’s order on appeal
because it did not move for arbitration.  But Baumeister moved for arbitration
of all claims, including specifically those against Sanford; appellees did not
object or specially except.  Sanford’s and Baumeister’s notice of appeal invoked
our jurisdiction over all parties.  See Tex. R. App. P. 25.1(b). 
Accordingly, Sanford has standing to challenge the trial court’s order in this
appeal.  See Ascendant Anesthesia, 348 S.W.3d at 461–62.