# NO. 12-19-00152-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| ***ETMC EMS AND GARY WOOLVERTON, EMT, APPELLANTS*** | *§* | ***APPEAL FROM THE*** |
| ***V.*** | *§* | ***COUNTY COURT AT LAW*** |
| ***SHARON DUNN, APPELLEE*** | *§* | ***SMITH COUNTY, TEXAS*** |

## *MEMORANDUM OPINION*

ETMC EMS and Gary Woolverton, EMT (collectively Appellants) appeal the trial court's denial of their motion to dismiss Appellee Sharon Dunn's suit based on her failure to comply with the requirements of Texas Civil Practice and Remedies Code, Section 74.351. Appellants raise four issues on appeal. We reverse and render in part and remand in part.

## BACKGROUND

On November 20, 2017, Dunn was working as a nurse for East Texas Medical Center (ETMC) at its Cedar Creek Lake, Texas emergency room. That evening, Dunn was in the process of preparing a patient to be transferred by ETMC emergency medical services (EMS) technicians. After providing the patient's information to an ETMC EMS paramedic, Dunn walked to the trauma bay where the patient was located to prepare the patient for transport by ETMC EMS to ETMC Athens for further treatment. This preparation entailed Dunn's downsizing the patient's IV pump, gathering the patient's medications, printing out the patient's vital signs, ensuring that the patient had her belongings with her, and answering any questions the patient might have had. As Dunn pulled back the privacy curtain and entered the trauma bay, Woolverton, an emergency medical technician (EMT) employed by ETMC EMS, who was following behind Dunn with a stretcher to transport the patient, struck Dunn, who was standing at the foot of the patient's bed, from behind

with the front portion of the stretcher.[1] As a result, Dunn fell forward onto the bed with the patient and injured her back.

Dunn filed the instant lawsuit, in which she alleged that Appellants are liable to her for negligence and gross negligence. Specifically, Dunn alleged that Appellants are negligent because (1) Woolverton failed to exercise the degree of care, skill, and competence that a reasonable and ordinary person would exercise under the circumstances, (2) Woolverton failed to exercise reasonable care to avoid a foreseeable risk of injury to others, (3) Woolverton failed to follow appropriate safety rules and regulations, (4) Woolverton operated equipment without proper and necessary training, and (5) ETMC EMS improperly trained Woolverton or failed to train him "on the proper standards."[2] Appellants each answered on September 10, 2018.

On February 19, 2019, Appellants filed a motion to dismiss pursuant to Texas Civil Practice and Remedies Code, Section 74.351(b), in which they argued that Dunn's suit should be dismissed because she alleged a health care liability claim, but failed to serve them with an expert report and curriculum vitae of the expert within one hundred twenty days from the date on which Appellants' answers were filed.[3] Dunn responded to Appellants' motion, and following a March 19, 2019, hearing, the trial court denied the motion. This interlocutory appeal followed.[4]

### MOTION TO DISMISS PURSUANT TO SECTION 74.351

In their first and second issues, Appellants argue that the trial court abused its discretion by denying their motion to dismiss because Dunn's claim is a health care liability claim, not an ordinary negligence claim,[5] and she failed to serve an expert report and curriculum vitae on them within one hundred twenty days from the date of their respective answers.

---

[1] Despite Dunn's allegations and deposition testimony of record tending to support these allegations, Appellants deny that this incident occurred.

[2] On March 29, 2019, Dunn filed an amended petition, in which she omitted her allegations that Woolverton failed to follow appropriate safety rules and regulations.

[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (West 2017).

[4] *See id.* § 51.014(a)(9) (West Supp. 2019).

[5] Dunn contends that her suit is more akin to a negligence claim arising from a car accident than a health care liability claim.

## Standard of Review and Governing Law

We review a trial court's ruling on a motion to dismiss under Section 74.351 for an abuse of discretion. *See **Abshire v. Christus Health Se. Tex.***, 563 S.W.3d 219, 223 (Tex. 2018); ***Univ. of Tex. Health Sci. Ctr. at Houston v. Cheatham***, 357 S.W.3d 747, 748 (Tex. App.–Houston [14th Dist.] 2011, pet. denied). Under this standard, we defer to a trial court's factual determinations, but we review de novo questions of law involving statutory interpretation. ***Morris v. Ponce***, 584 S.W.3d 922, 924 (Tex. App.–Houston [14th Dist.] 2019, pet. filed).

"To proceed with a health care liability claim, a claimant must comply with the expert report requirement of the Texas Medical Liability Act [(TMLA)]." ***Univ. of Tex. Med. Branch at Galveston v. Callas***, 497 S.W.3d 58, 61 n. 1 (Tex. App.–Houston [14th Dist.] 2016, pet. denied). Section 74.351, entitled "Expert Report," provides as follows:

> In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed, failing which all objections are waived.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). Section 74.351 also provides as follows:

> If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that: (1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and (2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

*Id.* § 74.351(b).

The TMLA defines a "health care liability claim" (HCLC) as

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13) (West 2017). According to its definition, an HCLC has three elements: (1) the defendant is a health care provider or physician; (2) the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's alleged departure from accepted standards proximately caused the claimant's injury or death. *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012).

This case focuses on the second element which concerns the nature of a claimant's "cause of action" and the definitions of medical care, health care, safety and professional or administrative services directly related to health care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13). The TMLA does not define the term "cause of action," but the generally accepted meaning of that phrase refers to the "fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief." *Cerda*, 379 S.W.3d at 255. "Health care" is defined broadly as "any act . . . performed . . . by any health care provider for [or] to . . . a patient during the patient's medical care, treatment, or confinement." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10).

Analysis of the second element—the cause of action—focuses on the facts underlying the claim, not the form of, or artfully-phrased language in, the plaintiff's pleadings describing the facts or legal theories asserted. *Cerda*, 379 S.W.3d at 255; *see, e.g.*, *Yamada v. Friend*, 335 S.W.3d 192, 196–97 (Tex. 2010); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 847, 854 (Tex. 2005). A claim based on one set of facts cannot be spliced or divided into both an HCLC and another type of claim. *See Cerda*, 379 S.W.3d at 255; *Yamada*, 335 S.W.3d at 197; *Diversicare*, 185 S.W.3d at 854. Thus, claims premised on facts that could support claims against a physician or health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care are HCLCs, regardless of whether the plaintiff alleges the defendant is liable for breach of any of those standards. *See Cerda*, 379 S.W.3d at 255. Moreover, the grounds for dismissal under Section 74.351 are not affirmative defenses, which a defendant is required to plead. *See Heriberto Sedeno, P.A. v. Mijares*, 333 S.W.3d 815, 823 (Tex. App.–Houston [1st Dist.] 2010, no pet.).

The broad language of the TMLA evidences legislative intent for the statute to have expansive application. *Id.* at 256; *see, e.g.*, TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10) (defining "health care" to include "any act . . . by any health care provider for, to, or on behalf of

a patient during the patient's medical care, treatment, or confinement"). The breadth of the statute's text essentially creates a presumption that a claim is an HCLC if it is against a physician or health care provider and is based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement. *Cerda*, 379 S.W.3d at 256. But the presumption necessarily is rebuttable. *Id.*

A safety standards-based claim does not come within the TMLA's provisions just because the underlying occurrence took place in a health care facility, the claim is against a health care provider, or both. *Id.* at 257; *see also* *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 503 (Tex. 2015). Rather, for a safety standards-based claim to be an HCLC, there must be a substantive nexus—one that is more than a "but for" relationship—between the safety standards allegedly violated and the provision of health care. *See Ross*, 462 S.W.3d at 504. The pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety. *Id.* at 505.

In determining whether a safety standards-based claim is substantively related to the defendant's providing of medical or health care and is, therefore, an HCLC, the following nonexclusive factors, are instructive:

> 1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

> 2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

> 3. At the time of the injury was the claimant in the process of seeking or receiving health care;

> 4. At the time of the injury was the claimant providing or assisting in providing health care;

> 5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

> 6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id.*

**Discussion**

Here, Appellants deny the occurrence of the incident in question. But Dunn presented evidence to the trial court in response to Appellants' motion, including the deposition testimonies of both Dunn and Registered Nurse Marsha Chennault, as well as Chennault's affidavit. The record reflects that Woolverton's moving the stretcher to the trauma bay was for the purpose of transferring the patient, initially on that stretcher from her bed to an ambulance, which would take her to another hospital. The record further reflects that the patient had cardiac and respiratory conditions, which required a higher level of medical treatment.[6] Dunn argues that the first *Ross* factor is not satisfied because the patient was not yet on the stretcher when Woolverton struck her with it. While her factual assertion is correct, we disagree that such a fact is dispositive of the first *Ross* factor. The record reflects that Woolverton was pushing the stretcher toward the trauma bay where the patient to be transported on that stretcher was located. It is not as if he was moving an empty stretcher from one part of the hospital to another for some purpose unrelated to health care. Rather, the task he was performing was one in a series of tasks necessary to retrieve the patient and safely transport her to an ambulance to transport her to another health care facility. Moreover, at the moment he struck Dunn with the stretcher, the record indicates that both Dunn and the stretcher were in the trauma bay by the patient's bed. Further still, Chennault testified that ETMC EMS employees are responsible for keeping patients safe while operating stretchers during transports. Accordingly, Woolverton would need to position the stretcher in the room in a manner wherein the patient safely could be moved from the bed to the stretcher. Regardless of whether the stretcher was empty, because Woolverton was moving the stretcher into the room to retrieve the patient to transport her on the stretcher, we conclude that the purpose of his performing this task was done in the interest of patient safety and with the objective of preventing harm to the patient from the outset of his interactions with her.

---

[6] In his deposition testimony, Woolverton stated that, on the day in question, he was part of an "advanced life support" unit, which are assigned to transfers that require a higher level of care than a basic EMT unit would provide.

6

Further, the emergency room trauma bay in which Woolverton struck Dunn with the stretcher was one where patients might be during their treatment so that the hospital's obligation to protect patients was implicated by Woolverton's alleged unsafe handling of the stretcher in that area. *See* **Phillips v. Jones**, No. 05-15-00005-CV, 2016 WL 80561, at \*2 (Tex. App.–Dallas Jan. 7, 2016, no pet.) (mem. op.) (examination room is room used by physician to examine patients seeking medical services). Indeed, a patient was in that area, and Dunn was in that area to prepare the patient for transport by performing several tasks previously enumerated. In fact, Dunn's proximity to the patient was so close that when Woolverton struck her with the stretcher, Dunn was knocked onto the bed with the patient.

Dunn was not seeking or receiving health care.[7] But the record supports that she, as a registered nurse, was a health care provider at the time Woolverton struck her with the stretcher. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(12)(A)(i). Moreover, the record reflects that after she provided information about the patient to an ETMC EMS paramedic, Dunn led the way as Woolverton and another individual followed with the stretcher. They entered the emergency room trauma bay where the patient was located to prepare the patient for transport to another hospital, which included Dunn's downsizing the patient's IV pump, gathering the patient's medications, printing out the patient's vital signs, ensuring that the patient had her belongings with her, and answering any questions the patient might have had.

Further, the evidence supports that the negligence Dunn alleged was based on safety standards arising from professional duties owed by Appellants as health care providers. Dunn alleged that she was injured when Woolverton, acting in the course of his duties as an EMT for ETMC EMS, struck her with a stretcher because he failed to operate the stretcher in a safe manner.[8] In her deposition testimony, Chennault stated that ETMC EMS employees pushed the stretcher too fast, were not paying adequate attention as they approached the patient with the stretcher because they were talking to one another, and the ETMC EMS employee at the rear of the stretcher had a cell phone in his hand.

---

[7] *But see* **Tex. W. Oaks Hosp., LP v. Williams**, 371 S.W.3d 171, 179 (Tex. 2012) (recognizing that nonpatients can be "claimants" under TMLA).

[8] After the hearing on Appellants' motion to dismiss, Dunn amended her pleadings. But despite the removal of language specifically relating her factual allegations related to "safety" in her amended petition, the underlying factual assertions and the nature of her claims are the same. *See* **Cerda**, 379 S.W.3d at 255 (claims premised on facts that could support claims against health care provider for safety directly related to health care are HCLCs, regardless of whether plaintiff alleges defendant is liable for breach of any of those standards).

Moreover, it is undisputed that the stretcher with which Woolverton struck Dunn was particularly suited to providing for the safety of patients as set forth in the ETMC EMS "Patient Handling Policy" describing the use of stretchers for patients. *Cf. Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 664 (Tex. 2010) (claim for injuries arising from improper operation of hospital bed, alleging that hospital employees negligently assembled or maintained bed, was "liability" claim). Dunn argues that expert testimony is not needed in this case because the procedures for operating a stretcher are common sense and a lay person would know not to push a stretcher too fast, not to engage in horseplay, and not to carry a cell phone in one's hand while pushing a stretcher. *See Diversicare*, 185 S.W.3d at 848 (necessity of expert testimony from medical or health care professional to prove claim may also be important factor in determining whether cause of action is inseparable part of rendition of medical or health care services). We disagree. As set forth above, this was not merely a situation where a hospital employee was moving a stretcher from one part of a hospital to another. We cannot consider Woolverton's operation of the stretcher in a vacuum. Indeed, the record reflects that Woolverton was moving the stretcher to an emergency room trauma bay to transport a patient, who had been admitted to the emergency room with cardiac and respiratory conditions. The record further reflects that the patient's condition was serious enough to warrant transporting her to another hospital. Thus, we conclude the propriety with which Woolverton operated the stretcher, given the specific circumstances in this case, is beyond that which can be considered common sense to a lay person, and expert testimony could assist a trier of fact to understand better the balance between the necessity of expedient patient care and the standards pertinent to the safe operation of a stretcher under such circumstances. *See* TEX. R. EVID. 702.

Appellants concede that the seventh *Ross* factor favors Dunn's position because Dunn claims the incident did not occur in the course of Appellants' taking or failing to take action necessary to comply with safety related requirements that a governmental or accrediting agency has set for health care providers. *But see Phillips*, 2016 WL 80561, at *2 (concluding that safety standards-based claim was HCLC with affirmative findings only on *Ross* factors 1, 2, 3, 5, and 6).

Having carefully considered the record and the nonexclusive factors set forth in *Ross*, and having concluded that factors one, two, four, five, and six are affirmatively supported by the record, we hold that the facts underlying Dunn's allegations against Appellants concern the violation of safety standards and amount to health care liability claims, *see Ross*, 462 S.W.3d at

8

505, rather than an ordinary negligence claim as Dunn contends. *See Cerda*, 379 S.W.3d at 255 (in determining whether claim is HCLC, court focuses on the facts underlying the claim, not form of, or artfully-phrased language in, plaintiff's pleadings describing facts or legal theories asserted; claim based on one set of facts cannot be spliced or divided into both HCLC and another type of claim). Appellants' first and second issues are sustained.

## QUASI-ESTOPPEL AND WAIVER

In their third issue, Appellants argue that they were not estopped from moving to dismiss Dunn's suit based on purported statements made by their trial counsel, nor did they waive their right to seek dismissal by engaging in discovery.[9]

### Quasi-Estoppel

Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *Lopez v. Munoz*, *Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit. *Id.* However, there can be no estoppel based on an acceptance of a benefit by a person who did not have knowledge of all material facts. *See Clark v. Cotten Schmidt, L.L.P.*, 327 S.W.3d 765, 770 (Tex. App.–Fort Worth 2010, no pet.) (citing *Frazier v. Wynn*, 472 S.W.2d 750, 753 (Tex. 1971); *Sun Operating Ltd. P'ship v. Holt*, 984 S.W.2d 277, 292 (Tex. App.– Amarillo 1998, pet. denied) (op. on reh'g)).

In the instant case, in response to Appellants' motion to dismiss, Dunn submitted her attorney's affidavit, in which he stated, in pertinent part, as follows:

> Soon after [Defendants' attorney,] William Ashcraft[,] answered Plaintiff's Original Petition on behalf of his client, ETMC EMS, Mr. Ashcraft and I had a telephonic discussion about this case. At that time, I specifically asked Mr. Ashcraft if he, or his clients, would be claiming this case as a health care liability claim. He specifically and unequivocally replied that [neither] he, nor his client, considered this case a health care liability claim. He further stated, he needed to depose the Plaintiff, evaluate the case, and would then like to try to resolve the case shortly thereafter.

> During the same telephone discussion, Mr. Ashcraft indicated that he handles the employment law for ETMC and ETMC EMS (both the entities at the time) and he does not handle their medical-malpractice cases as those cases are handled by other counsel . . . .

---

[9] In their brief, Appellants address their first three issues together. Although they may have intended the issue of waiver to be addressed as part of their first issue, we are considering it as part of their third issue.

In response, Appellants' attorney stated that he did not recall making this statement.

Assuming arguendo that Dunn's attorney's affidavit accurately sets forth the conversation between him and Appellants' attorney, this evidence does not support the existence of quasi-estoppel. Specifically, Dunn's counsel states in his affidavit that the conversation occurred soon after Appellants filed an answer, which the record indicates took place on September 10, 2018, more than a month before Appellants served their initial discovery request to Dunn. Moreover, in conjunction with Appellants' counsel's assertion about his assessment of the nature of Dunn's claim, he also stated that he handles employment law cases for ETMC and ETMC EMS, and another attorney handles medical malpractice cases for those entities.

As set forth previously, analysis of whether a cause of action is an HCLC focuses on the facts underlying the claim, not the form of, or artfully-phrased language in, the plaintiff's pleadings describing the facts or legal theories asserted. *See Cerda*, 379 S.W.3d at 255. And there can be no estoppel based on an acceptance of the benefits by a person who did not have knowledge of all material facts. *Clark*, 327 S.W.3d at 770.

Here, Dunn's attorney's affidavit sets forth that Appellants' counsel, who handled employment law cases rather than malpractice cases for ETMC and ETMC EMS, purportedly made the assertion that he did not consider the case to be an HCLC shortly after he filed a general denial. There is no evidence to demonstrate that he had knowledge of all material facts, on which he might base such a legal conclusion. To the contrary, the record reflects that no discovery had been conducted at the time of the conversation. Further, based on a statement that his experience in representing ETMC and ETMC EMS was in employment law rather than medical malpractice matters does not support a conclusion that he was, at that time, familiar with what sort of facts support a conclusion that a claim amounts to a health care liability claim or the requirements of Section 74.351. More particularly, it does not support that he understood that he and his clients could benefit by his asserting that he did not consider the claim to be a HCLC, thereby causing Dunn, who, at that time, presumably had superior knowledge of the facts underlying her allegations, to ignore the expert report deadlines set forth in Section 74.351. Therefore, we hold that the trial court's obligation to dismiss Dunn's suit pursuant to Section 74.351 is not precluded by the doctrine of quasi-estoppel. *See id.*

10

**Waiver**

Appellants further contend that they did not waive their right to seek dismissal by engaging in discovery. Appellants' participation in discovery is insufficient to establish waiver, because an attempt to learn more about the case in which one is a party does not demonstrate an intent to waive the right to move for dismissal. *See Jernigan v. Langley*, 111 S.W.3d 153, 157 (Tex. 2003) (applying former version of Section 74.351). Furthermore, Chapter 74 imposes no deadline for filing a motion to dismiss. *See Empowerment Options, Inc. v. Easley*, No. 09-06-00148-CV, 2006 WL 3239527, at *4 (Tex. App.–Beaumont Nov. 9, 2006, pet. denied) (mem. op.).

Here, the record does not indicate that Appellants, through discovery, acted inconsistently with their ultimate decision to move to dismiss pursuant to Section 74.351(b). Therefore, under the circumstances of this case, we are not persuaded that Appellants are barred by their own conduct from filing their motion to dismiss. Appellants' third issue is sustained.

## MANDATORY DISMISSAL OF CLAIM AND AWARD OF ATTORNEY'S FEES AND COURT COSTS

Pursuant to Section 74.351(b), if a claimant in a health care liability claim does not serve an expert report within the specified period, the trial court, on the motion of the affected health care provider, shall enter an order that dismisses the claim with prejudice and awards attorney's fees and costs of court incurred by the affected health care provider. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b); *Hernandez v. Ebrom*, 289 S.W.3d 316, 318 (Tex. 2009) (if timely and sufficient report not served, trial court must award provider its attorney's fees and costs and dismiss case with prejudice).

In the instant case, we have determined that Dunn's suit is a health care liability claim and her responsibility to comply with the requirements of Section 74.351 was not excused by quasi-estoppel or waived by Appellants. Thus, we conclude that the trial court abused its discretion by denying Appellants' motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. 74.351(b).

In their fourth issue Appellants argue that the trial court abused its discretion by not awarding them attorney's fees. Because Dunn's claim is a health care liability claim, and she failed to serve timely an expert report and curriculum vitae on Appellants, the trial court was required to award Appellants attorney's fees and court costs. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b); *Hernandez*, 289 S.W.3d at 318. Appellants' fourth issue is sustained.

11

## DISPOSITION

Having sustained Appellants' issues one, two, three, and four, we *reverse* the trial court's order denying Appellants' motion to dismiss, *render* an order *dismissing* Dunn's suit *with prejudice*, and *remand* the cause to the trial court to consider the amount of attorney's fees and court costs to be awarded to Appellants.

BRIAN HOYLE
Justice

Opinion delivered February 5, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 5, 2020**

**NO. 12-19-00152-CV**

**ETMC EMS AND GARY WOOLVERTON, EMT,**
Appellants
V.
**SHARON DUNN,**
Appellee

Appeal from the County Court at Law

of Smith County, Texas (Tr.Ct.No. 68714)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the order of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the order denying Appellants' motion to dismiss be **reversed** and an order is **rendered dismissing** Appellee Sharon Dunn's suit **with prejudice**, and the cause be **remanded** to the trial court to consider the amount of attorney's fees and court costs to be awarded to Appellants; and that all costs of this appeal are hereby adjudged against the Appellee, **SHARON DUNN**, in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*